(91 App. Div. 20.)

PEOPLE ex rel. McPIKE v. VAN DE CARR, Warden.

(Supreme Court, Appellate Division, First Department.    February 5, 1904.)

1. STATUTES—CONSTITUTIONALITY—SEPARABLE PROVISIONS.
     Where a statute contains separable provisions absolutely independent of each other, some of which are constitutional, and the others not, that part of the statute which is valid may be sustained, and the balance condemned.

2. SAME—NATIONAL FLAG—DESECRATION—POLICE POWER.
     Such part of Pen. Code, § 640, subd. 16, as prohibits any person from publicly mutilating, defacing, defiling, or defying, trampling on, or casting contempt, either by words or act, on the United States flag or the state flag, standard, color, or ensign, and making such act a misdemeanor, was a proper exercise of the state's police power to prevent a breach of the peace.

3. SAME—TRADE-MARKS—DEPRIVATION OF LIBERTY.
     That part of Pen. Code, § 640, subd. 16, which prohibits the use of the national flag or state flag, standard, color, or ensign as a trade-mark or a trade label, or for the advertisement of merchandise, is unconstitutional, as an unwarranted restraint on the personal liberty of the citizen.

4. SAME—CLASS LEGISLATION.
     Pen. Code, § 640, subd. 16, in part prohibits the use of the American flag or the state flag, color, standard, or ensign to advertise any merchandise, but provides that the section shall not apply to any newspaper, periodical, book, pamphlet, etc., ornamental picture, article of jewelry, or stationery for use in correspondence, or any of which shall be printed, painted, or placed on said flag, disconnected from any advertisement. *Held*, that such part of the section was unconstitutional, as class legislation.

     Van Brunt, P. J., and Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the people, on the relation of Jacob H. McPike, against John C. Van De Carr, warden of the city prison of the city of New York, to review relator's detention.    From an order remanding relator to custody, he appeals.    Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Louis Marshall, for appellant.
Howard S. Gans, for respondent.

PATTERSON, J.    The relator, a resident of the city of New York, was imprisoned and held in custody by the respondent under a commitment issued by a city magistrate, charging him with the violation of

¶ 1. See Statutes, vol. 44, Cent. Dig. § 58.

a provision of section 640 of the Penal Code. He thereupon procured a writ of habeas corpus, and sought to be discharged from detention, on the ground that the statute which created the offense with which he was charged, and for the commission of which he was arrested and imprisoned, is unconstitutional. That statute is chapter 272, p. 572, of the Laws of 1903, entitled "An act to amend section 640 of the Penal Code, relative to the desecration, mutilation or improper use of the flag of the United States or of this state." The several provisions of the amendment will be hereinafter referred to. The respondent made return to the writ of habeas corpus, setting forth, in substance, that the relator was in custody in the city prison under the commitment referred to. Upon a hearing the writ was dismissed, and the prisoner was paroled in the custody of his counsel until the final determination of an appeal from the order of dismissal. Prior to the hearing the parties stipulated that the allegations contained in the first and second paragraphs of the relator's petition for the writ are true. Referring to such allegations, it is established that the relator is a resident of the city and state of New York, a citizen of said state and of the United States, and has been engaged in the city of New York for several years as manager of the cigar department of the firm of Bennett, Sloan & Co., at 100 Hudson street, in the city of New York, whose business is, and for many years has been, that of selling teas, coffees, and cigars, and offering for sale such merchandise, and the receptacles in which the same are contained (and especially, in the case of cigars, the boxes containing the same), including the labels, trade-marks, and decorations contained thereon and therein; that the business is carried on in accordance with the practice and custom which has prevailed in the cigar trade for upwards of 50 years; that the firm of Bennett, Sloan & Co. is the sales agent in the city of New York of A. S. Valentine & Son, of Philadelphia, Pa., who are manufacturers at that city of the cigars mentioned in the complaint, upon which the magistrate's commitment was issued; that such cigars were manufactured in the state of Pennsylvania, and shipped to the state of New York in the usual form of boxes, containing 50 cigars each, in which form they were exposed for sale by the petitioner; that the petitioner is imprisoned and restrained of his liberty by the warden of the city prison of the city of New York under a mandate issued by a city magistrate in the borough of Manhattan, in the city of New York, a copy of which mandate is annexed to the complaint upon which the commitment was issued. In that complaint, which was made by B. Benjamin Schiff, the following statements are made, viz.: That one Jacob H. McPike (the relator), who was in the employ of said firm (Bennett, Sloan & Co.)—

"Did unlawfully and feloniously expose to public view, sell and expose for sale, and have in his possession for sale, two boxes, each containing cigars, said cigars being an article of merchandise, and said boxes being receptacles for such merchandise, upon each of which said boxes or receptacles there was printed and placed a representation of the flag, standard, color, and ensign of the United States of America, and pictures and representations thereof, upon which were shown the stars and stripes of said flag, standard, colors, and ensign, by which picture or representation, a person seeing the same, to wit, B. Benjamin Schiff, without deliberation, believed the same to represent the flag, standard, colors, and ensign of the United States of America, for the

purpose and with the intent to advertise, call attention to, decorate, mark, and designate the said boxes and cigars contained therein."

Annexed to the complaint are exhibits consisting of labels such as were placed upon the cigar boxes mentioned in the complaint. The labels marked Exhibits 1 and 2 are called the "Betsy Ross Labels." Exhibit No. 1 bears the statement that it is a trade-mark designed and owned by A. S. Valentine & Son. Immediately under the name of the brand is a medallion likeness purporting to be that of Betsy Ross. On the right of the medallion is a figure of the Liberty Bell, and another of Independence Hall, and on the left a representation of the Betsy Ross house, in Philadelphia, where the first American flag was made. Above the medallion is a blue field, with white stars in it, and at the lower end of the medallion is a small section of the American flag. On Exhibit No. 2, under the name "Betsy Ross," is a picture of the old statehouse in Philadelphia, and parts of the American flag are displayed in the label. Exhibit No. 3 is a label of the "Color Bearer" brand. It represents soldiers engaged in action, one of them bearing the American flag. None of these labels presents the American flag in any degrading or belittling way, but quite the contrary. They are trade labels. They were adopted and in use before the passage of the amendment to the Penal Code which creates the offense for the commission of which the relator was arrested and held in custody.

Prior to the enactment of the amendment of the section of the Penal Code now under consideration, it was perfectly legitimate to use the American flag in conjunction with, or as forming part of, a trade label. There is no act of the Congress of the United States prohibiting it, and such a label was entitled to judicial protection. The invasion of the rights of an owner thereof would be prevented or restrained by a court of equity. The right to a trade label is a property right.

The constitutionality of the whole of subdivision 16 of section 640 of the Penal Code is challenged on the ground that it is an enactment in violation of sections 1 and 6 of article 1 of the Constitution of the state of New York, and that it is in violation of section 8 of article 1 of the Constitution of the United States, which confers exclusive power upon the Congress to regulate commerce among the several states; that the legislation is void because the Legislature of the state of New York has not power or jurisdiction to legislate with respect to the flag, standard, colors, or ensign of the United States of America, that subject being within the sole and exclusive jurisdiction of the Congress of the United States of America, and that it is in violation of section 1 of article 14 of the Constitution of the United States, because it denies to the relator the equal protection of the laws of the state of New York, and abridges his privileges and immunities as a citizen of the United States. The text of subdivision 16 of the statute is as follows:

"(16) Any person, who in any manner, for exhibition or display, shall place or cause to be placed, any word, figure, mark, picture, design, drawing or any advertisement, of any nature, upon any flag, standard, color or ensign of the United States or state flag of this state or ensign, or shall expose or cause to be exposed to public view any such flag, standard, color or ensign, upon

which shall be printed, painted or otherwise placed, or to which shall be attached, appended, affixed or annexed, any word, figure, mark, picture, design or drawing, or any advertisement of any nature, or who shall expose to public view, manufacture, sell, expose for sale, give away or have in possession for sale, or to give away, or for use for any purpose, any article or substance, being an article of merchandise, or a receptacle of merchandise upon which shall have been printed, painted, attached, or otherwise placed, a representation of any such flag, standard, color or ensign, to advertise, call attention to, decorate, mark or distinguish, the article, or substance, on which so placed, or who shall publicly mutilate, deface, defile or defy, trample upon, or cast contempt, either by words or act, upon any such flag, standard, color or ensign, shall be deemed guilty of a misdemeanor, and shall be punished by a fine not exceeding one hundred dollars, or by imprisonment for not more than thirty days, or both, in the discretion of the court. The words flag, standard, color or ensign, as used in this subdivision or section, shall include any flag, standard, color, ensign, or any picture or representation, of either thereof, made of any substance, and of any size, evidently purporting to be either of, said flag, standard, color or ensign, of the United States of America, or a picture or a representation, of either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation may believe the same to represent the flag, colors, standard, or ensign, of the United States of America. This subdivision and section shall not apply to any act permitted by the statutes of the United States of America or by the United States army and navy regulations nor shall it be construed to apply to a newspaper, periodical, book, pamphlet, circular, certificate, diploma, warrant or commission or appointment to office, ornamental picture, article of jewelry, or stationery for use in correspondence, on any of which shall be printed, painted or placed, said flag, disconnected from any advertisement."

It is manifest, from reading this statute, that three separate things are declared to be criminal acts: First, the use of the United States flag or the state flag—that is, the ensign itself—for the exhibition or display of any word, figure, mark, picture, design, drawing, or advertisement of any nature; second, exposing to public view, manufacturing, selling, exposing for sale, giving away, or having in possession for sale or giving away or for use for any purpose, any article or substance, being an article of merchandise or a receptacle of merchandise, upon which shall have been printed, painted, or otherwise placed, a representation of any such flag, standard, color, or ensign, to advertise, call attention to, decorate, mark, or distinguish the article or substance on which it is so placed; third, publicly mutilating, defacing, defiling, or defying, trampling upon, or casting contempt, either by words or act, upon, any such flag, standard, color, or ensign. Each of the acts prohibited is constituted a misdemeanor. The statute then defines the meaning of the words "flag," "standard," "color," and "ensign," and the trade labels in this case come within that definition.

It is, we think, apparent that the whole of this act is not unconstitutional. It is well settled that the same statute may be in part constitutional and in part unconstitutional; but, if the parts are absolutely independent of each other, that which is constitutional may stand, while that which is unconstitutional will be condemned. Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108. In the Virginia Coupon Cases, 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 185, Judge Matthews said:

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and

void because unconstitutional; and there are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail."

It was competent to the Legislature to make it a misdemeanor to publicly mutilate, deface, defy, defile, trample on, or cast contempt, either by words or act, upon the national or state flag, and mutilation of the flag may mean the printing of an advertisement on the ensign itself. Such legislation is within the police power of the state, for it relates to the preservation of the peace. It tends to prevent the commission of acts which would arouse the indignation of the public and lead to the infliction of summary chastisement upon an offender, for it is not a mere rhetorical phrase to say that the public have constituted themselves the guardians and protectors of the national flag. The state has taken upon itself the punishment of those whose acts would excite the people to violence, and legislation to accomplish that result relates directly to the preservation of the public peace and the good order of society. "Breach of the peace is an offense well known to the common law. It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation or alarm, disturbs the peace and quiet of the community. * * * It may be committed even by spoken words, provided they tend to provoke immediate violence." People v. Most, 171 N. Y. 429, 64 N. E. 175.

But while it was within the power of the Legislature to enact so much of the statute as relates to the defilement and mutilation of the flag, and that part of it may be separated from other provisions, we are led to the conclusion that such other provisions are unconstitutional, because they unwarrantably interfere with the liberty of the citizen, and create an unjust discrimination between persons engaged in business, with reference to the use of the national ensign in their business. All parts of this statute must be upheld, if at all, on the ground that the legislation is within the police power of the state. It is elementary that, to be within the police power, the legislation must relate in some way to the public health, morals, safety, comfort, or general welfare. It is not to be disputed that it is for the Legislature generally to determine what laws and regulations are required to subserve either of such purposes, and that the exercise of legislative discretion in those respects is not the subject of judicial review; but, as was said in People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465:

"A statute, to be upheld as an exercise of the police power, must have some relation to those ends. The rights of property may not be invaded under the guise of a police regulation, * * * when it is manifest such is not the object of the regulation."

The interdiction by the state of the use of a picture or representation of the American flag as a trade-mark or upon trade labels, or in connection with an advertisement of merchandise, in no way relates to any one of the legitimate subjects to which the police power of the state extends. It is not to be assumed even that the decorous use of

a representation of the flag for such purposes runs counter to a general public sentiment, or that the statute in this respect gives expression to a general public desire.   The government of the United States has not prohibited the use of the flag in connection with advertisements.   Trade labels, of which a representation of the national ensign forms a part, are accepted at the Patent Office, as appears upon the face of one of the labels annexed to the complaint in this matter. Such trade-marks and labels have been of common use.   "National flags are sometimes blended with other objects to catch the eye. They are admirably adapted to all purposes of heraldic display, and their rich, glowing colors appeal to feelings of patriotism, and win purchasers of the merchandise to which they are affixed.   *   *   * One flag printed in green may catch the eye of a son of the Emerald Isle.   *   *   *   Another flag, with stars on a blue field, and stripes of alternate red and white, may secure a preference for the commodity upon which it is stamped."   Browne on Trade-Marks, 265.   There is nothing in the use of a representation of the American flag as a trade-mark, or in connection with a trade-mark or trade label, that inspires the idea that that flag is degraded or belittled.   On the contrary, the remark of Mr. Browne would seem to indicate the real situation, namely, that their rich glowing colors appeal to feelings of patriotism.

Not relating to any legitimate exercise of police power, those provisions of the statute under consideration which make it a criminal offense to use the national standard in connection with a trade-mark or trade label or advertisement of merchandise cannot be regarded otherwise than as an unauthorized interference with the privilege and the liberty of the citizen, for liberty, as is well understood, includes the right to engage in any lawful pursuit not injurious to the community, and subject only to the restraints necessary for the common welfare (People v. Marx, 99 N. Y. 386, 2 N. E. 29, 52 Am. Rep. 34), and that includes the right to use all agencies customary and lawful in the prosecution of business; and it is not legitimate legislation to declare that one of those customary and lawful agencies shall become unlawful, unless its use in some way affects the public health, the public morals, the public peace, the public safety, the public welfare, or the general comfort.   Hence we think, as to this statute, on the point now under consideration, it is obnoxious to the objection that it infringes upon the personal liberty of the citizen.   What is said on this subject in Ruhetrat v. People, 185 Ill. 133, 57 N. E. 41, 49 L. R. A. 181, 76 Am. St. Rep. 30, is pertinent and instructive:

"Legislation will not be allowed arbitrarily to interfere with the personal liberty of the citizen under the specious guise of an exercise of the police power, and therefore it is that our courts may supervise, as a judicial question, a determination of the Legislature to exercise the police power in restraint of some trade or calling."

Gray, J., People v. Lochner, 177 N. Y. 145, 69 N. E. 373.   January, 1904).

There is another objection to be considered, and that is that the parts of the statute we have last considered offend against that provision of the fourteenth amendment of the Constitution of the United

States which declares that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any one within its jurisdiction the equal protection of the laws. What this provision means is proclaimed in Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, where it said that it is—

"Undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all, under like circumstances, in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that, in the administration of criminal justice, no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."

By the terms of the statute applicable to this case, a clear discrimination is made between citizens engaged in business, in the use of a representation of the American flag in connection with their business. The merchant and the manufacturer are made criminals for using such representation, while the book publisher, the newspaper proprietor, the jeweler, and the stationer are permitted to use the symbol in their business, to put it upon their merchandise, and to make profit by its use. The situation is not saved by the introduction into the statute of the proviso that the stationer, the book publisher, the jeweler, and the newspaper proprietor may use the representation of the flag so long as it is disconnected from any advertisement. The representation of the flag is impressed upon the goods of such persons, and they advertise by it. The label and the trade-mark are or may be equally impressed upon the goods of other persons. In either case there is no substantial difference in the use of the symbol or representation of the flag. Certain classes of men by this law are allowed to use that representation of the flag for their own profit on their merchandise, while others are not only debarred from doing so, but are subjected to the penalties imposed for the commission of a crime. What is that but class legislation?

Without regard to other and very serious grounds of attack upon the constitutionality of the law under consideration, so far as it relates to the charge against this relator, we are of opinion that the provisions of the statute under which he was held and detained are unconstitutional, and that the order appealed from should be reversed, and the relator discharged from custody.

INGRAHAM and HATCH, JJ., concur. VAN BRUNT, P. J., and LAUGHLIN, J., dissent.