William M. HODSDON, Plaintiff,

v.

David P. BUCKSON, Attorney General of the State of Delaware, and Ruth M. Ferrell, Deputy Attorney General of the State of Delaware, Defendants.

Civ. A. No. 3500.

United States District Court,
D. Delaware.

March 18, 1970.

William E. Taylor, Jr., of Taylor & Lindh, Wilmington, Del., for plaintiff.

David P. Buckson, Atty. Gen. of Delaware and Ruth M. Ferrell, Deputy Atty. Gen., for defendants.

## OPINION

Before SEITZ, Circuit Judge, and WRIGHT and LAYTON, District Judges.

WRIGHT, District Judge.

Plaintiff William M. Hodsdon is here seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983. Specifically, he requests this court to declare a section of the Delaware Code, 11 Del.C. § 532, unconstitutional, and to enjoin defendants David P. Buckson, Attorney General of Delaware, and Ruth M. Ferrell, Deputy Attorney General, from continuing to prosecute him for a violation thereof. This three-judge court was convened because requests for relief invoke the provisions of 28 U.S.C. §§ 2281–2284.

The state indictment of which plaintiff here complains is the culmination of a series of efforts to cause him to cease using his American flag to express displeasure with United States involvement in the Vietnam war and with what he considers various civil injustices. The state of Delaware first brought an action in the United States District Court for the District of Delaware seeking to enjoin plaintiff's display of the flag inconsistent with the flag etiquette provisions of 36 U.S.C. §§ 174–178. The

District Court dismissed that action for lack of jurisdiction. State of Delaware ex rel. Trader v. Hodsdon, 265 F.Supp. 308 (1967).

On April 18, 1967, defendants secured an indictment in the Delaware Superior Court against plaintiff for violation of 11 Del.C. § 532. That section reads, in relevant part, as follows:

> "Whoever publicly mutilates, defaces, defiles, defies, tramples upon or casts contempt either by word or act, upon (the American flag)—Shall be fined not more than $100 or imprisoned not more than 30 days, or both."

The indictment charged that plaintiff had violated the act at numerous times beginning in July, 1966, by

> "displaying simultaneously on the front of his residence at 3202 Fernwood Place, Wilmington, Delaware, the United Nations flag in the position of honor on the right side of his house and the United States flag in the subordinate position on the left side of his house and flown in a half-mast position."

Plaintiff moved to dismiss the action in the state court. His motion was denied, as was his request for a writ of prohibition from the Delaware Supreme Court. 239 A.2d 222 (Del.1968). He then instituted this action on March 14, 1968. This Court heard argument on

motions to dismiss and plaintiff's motion for summary judgment. Decision was deferred by agreement among the parties [1] so the Court could have the benefit of an impending decision of the United States Supreme Court thought to deal with the issues here. Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

Plaintiff urges this Court to declare the statute unconstitutional "in that it abridges plaintiff's right of freedom of speech," and on the ground "that it is impermissibly vague and indefinite."

If plaintiff attacked the statute solely for its vagueness, it would be necessary to decide if a narowing construction by the state courts "would avoid or modify the constitutional question." Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The possibility of such construction would require abstention from needless intervention in state court proceedings. Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Here, however, plaintiff also attacks the statute on its face, and if no conceivable construction [2] will repair unconstitutional infirmities, abstention is both unnecessary and improper. Zwickler v. Koota, supra, at 249–252, 88 S.Ct. 391.

Having carefully examined this statute, giving due presumption to its

---

1. Defendants agreed not to proceed with the pending prosecution until a decision in this action.

2. In his letter opinion denying the motion to dismiss in the state court, Judge Quillen gave a lengthy construction of the statute. He said:
   As I interpret the crucial statutory words used in this indictment, their purpose is to convict those who publicly and intentionally commit acts or speak words either calculated to defile, defy, or cast contempt upon the American flag or done with a callousness as to their result in that regard. It is inconceivable to me that our legislature intended this statute to be used to convict those who inadvertently damage the flag. Compare State v. Tabasso Homes, Inc., 3 Terry 110,

28 A.2d 248, 254 (Gen.Sess.1942). More specifically, I interpret the statutory words involved here to require not only that the acts alleged be acts which dishonor the flag in the mind of a reasonable man, but also that they be done by the defendant with the intent so to dishonor the flag or with a conscious indifference to that result. I think this follows from the words themselves, "defile, defy, or cast contempt * * * upon." Page 6 of letter opinion dated January 15, 1968. Whether or not his construction represents the final opinion of the Delaware courts on the meaning of the statute would present a nice question, but one this Court need not decide. Neither that construction nor any other would remedy the statute's basic defect.

validity, the Court concludes that no construction could remedy its impermissible intrusion into areas of expression protected by the First Amendment. The Court cannot abstain, and, for reasons hereafter stated, holds that 11 Del.C. § 532 is unconstitutionally overbroad.

■ As Mr. Justice Harlan pointed out in *Zwickler* overbreadth and vagueness are not always easy or profitable to distinguish. 389 U.S. at 255–257, 88 S.Ct. 391 (concurring opinion). Statutes which suffer from one often suffer from the other.[3] This Court understands overbreadth to be the statutory result when the legislature, having the power to regulate certain conduct, strikes so bluntly as to proscribe constitutionally protected conduct as well. See Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.R. 67, 96–97 (1960), and Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.R. 844 (1970). Whether the overbroad sweep results from a clear intent to regulate both types of conduct, or from use of vague and confusing terms, the defect is fatal.

■■ The danger of chilling the exercise of fundamental freedoms, especially those protected by the First Amendment, requires that when the conduct regulated approaches a protected zone, government regulate "only with narrow specificity." "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms," because those freedoms need "breathing space to survive." NAACP v. Button, 371 U.S. 415, 433, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

■ As the Supreme Court noted in *Button*, the objectionable aspect of overbreadth is not the absence of fair notice of the statute's import, but rather the danger of tolerating "a penal statute susceptible of sweeping and improper application. * * * *" Id. at 432–433, 83 S.Ct. at 338. In Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960), the Court said:

> " * * * even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."

See Note, Less Drastic Means and the First Amendment, 78 Yale L.J. 464 (1969). The Delaware statute attacked here is capable of an application so sweeping and improper that even if some of its goals may constitutionally be reached,[4] it must fall in its entirety, lest protected expression be deterred by fear of prosecution.

No cases provide clear precedent for the holding here, but several decisions of the Supreme Court offer guiding principles. In Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), the defendant asserted that his conviction under a New York statute [5] substantially identical to the one attacked here abridged his freedom of expression. To protest the shooting of civil rights leader James Meredith, Street burned an American flag on a Brooklyn street corner. As the flag burned, he exhorted a small crowd, "We don't need no damn flag * * *. If they let that happen to Meredith we don't need an American flag."

The Supreme Court agreed with Street that the conviction abridged his freedom of expression. It based the holding, however, on the fact that the statute permitted him to be convicted either solely for the contemptuous words which accompanied his burning the flag or for the combination of words and act. His words, said the Court, were protected

---

3. Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 871–876 (1970).

4. Four justices had no doubt, at the time of Street v. New York, supra, that the state could punish the act of burning the flag. See dissenting opinion of the Chief Justice and Justices White, Black. and Fortas in that case.

5. N.Y. Penal Law, McKinney's Consol. Laws, c. 40, § 1425, subd. 16, par. d.

by the First Amendment and could not constitutionally support a conviction.

The Court identified four governmental interests that might be furthered by punishing Street for his words: (1) an interest in preventing him from vocally inciting others to commit unlawful acts; (2) an interest in preventing him from uttering words so inflammatory that they would provoke others to retaliate physically against him, causing a breach of the peace; (3) an interest in protecting the sensibilities of passersby who might be shocked by Street's words about the American flag; (4) an interest in assuring that Street, regardless of the impact of his words on others, showed proper respect for the national symbol. None of those interests, concluded the Court, could constitutionally justify a conviction under the statute. The Court had "* * * no doubt that the constitutionally guaranteed 'freedom to be intellectually * * * diverse or even contrary,' and the 'right to differ as to things that touch the heart of the existing order,' encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous." Street v. New York, supra, at 593, 89 S.Ct. at 1366.

The Supreme Court intimated no opinion in *Street* as to the constitutionality of efforts to punish *acts* alone which "mutilate, deface, defile or defy, trample upon, or cast contempt upon" the flag. Defendants here urge that the "words" portion of the Delaware statute is severable, and that insofar as the "acts" portion is concerned, *Street* made no determination of its validity. This Court agrees. The crucial issue, therefore, is whether, although the state may not by a statute like the one here punish words defiant or contemptuous

of the flag, it may nevertheless punish acts which convey identical ideas.

Expression is not confined to the spoken and written word. A court may take judicial notice of the symbolic significance of particular acts.[6] Nor is expression deprived of constitutional protection because it is nonverbal. In Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), a state statute forbidding display of a red flag "as a * * * symbol * * * of opposition to organized government or as an invitation or stimulus to anarchistic action" was held unconstitutional. More recently, in Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Court held that wearing black armbands for the purpose of expressing opposition to the war in Vietnam was closely akin to "pure speech" and that, inasmuch as it was not associated with any actually or potentially disruptive conduct, it was beyond the regulatory power of school authorities. Thus, although acts are not beyond regulation because they have symbolic components,[7] in the absence of factors justifying limitation, symbolic speech is constitutionally protected. This Court takes judicial notice of the symbolic significance of flying the American flag. Like the conduct in *Tinker*, it is closely akin to "pure speech," and if a statute attempts to regulate it in furtherance of no interest other than suppression of expression, this Court has no choice but to strike that statute down.

Defendants maintain that laws such as this one are legitimate exercises of the state's police power. The state has a strong interest in protecting the national symbol and encouraging patriotism, as well as in preventing breaches of the peace surely ensuing from desecration of that symbol, they say, and individual

6. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); see also the footnote to Mr. Justice Harlan's opinion concurring in dismissal of the appeal in Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970).

7. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1948); Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

liberties must yield when restraints are reasonable and directed to those interests. Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Adderley v. Florida, supra; Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

Defendants urge that the instant case is controlled by the rationale of United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673 (1968), and United States v. Miller, 367 F.2d 72 (2d Cir. 1966) cert. den. 386 U.S. 911, 87 S.Ct. 855, 17 L.Ed.2d 787. Those cases held that the national interest in efficient administration of the selective service system justifies limitation of freedom to burn one's registration card as a protest. In O'Brien, the Court said:

"* * * when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. at 376, 88 S.Ct. at 1678.

Accordingly, argue defendants, the strong interest in regulating the nonspeech elements in conduct associated with the flag justifies incidental intrusions on whatever speech elements may be involved.

■ That the state has an interest in the preservation of the national symbol is not disputed. Nor is it questionable that the interest permits some types of regulation, to the detriment of asserted freedoms. Halter v. Nebraska, supra; Cowgill v. California, Cal.App., 78 Cal. Rptr. 853 (1969), appeal dismissed, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590. The Court said in O'Brien, however, that a government regulation is justified if it meets four criteria:

(1) It is within the constitutional power of the government;

(2) It furthers an important or substantial governmental interest;

(3) The governmental interest is unrelated to the suppression of free expression; and

(4) The incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. United States v. O'Brien, supra, 391 U.S. at 377, 88 S.Ct. 1673.

The Court distinguished O'Brien from a case "where the alleged governmental interest in regulating conduct arises in some measure because the communication allegedly integral to the conduct is itself thought to be harmful." Specifically, the Court distinguished Stromberg v. California, supra: "Since the statute there was aimed at suppressing communication, it could not be sustained as a regulation of noncommunicative conduct." Id. 391 U.S. at 382, 88 S.Ct. at 1682.

In the present case, although nonspeech elements are present in the conduct regulated, the statute is so broad that it strikes where no interest is served other than the proscription of expression. Unlike the statute sustained in O'Brien, narrowly drawn and clearly directed to the preservation of a national administrative scheme, this law encompasses acts which bear no relation to any interest within the legislative competence and which are intended and understood as symbolic speech.

■ 11 Del.C. § 532 does not, for example, limit itself to deviations from orthodox display procedures. It is directed not to rules, if they exist, governing display of the flag, but to the attitude displayed by the person who flies it. If there are limitations on the protection afforded conduct by the First Amendment, they are defined by exigencies other than the prevention of public expression of attitudes—even those of defiance or contempt. That Amendment indeed guarantees the right to express such attitudes toward the government, and it is the strength of our democracy that they are tolerated in almost all their public manifestations. That tolerance

is not only a benefit flowing from diligent protection of fundamental freedoms; it is a *sine qua non* of their continued enjoyment.

Nor does the statute limit itself to those who fly the flag. Any act which casts contempt upon or defies it, whether affecting it physically, or not, is potentially illegal. Gestures or salutes which identify unpopular or controversial groups may apparently be forbidden. Defendants themselves have indicated that schools in Delaware may invoke the statute to forbid students to render the so-called "clenched fist" or "black power" salute to the flag at athletic events.[8]

In Barnette v. West Virginia Board of Education, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Supreme Court held that a state could not make performance of a flag salute and pledge of allegiance a condition of free public education, and refusal tantamount to delinquency. It noted that the state's employment of the flag "as a symbol of adherence to government as presently organized" inevitably cast the issue as one of expression. "It [the state] requires the individual to communicate by word and sign his acceptance of the political ideas it thus bespeaks." 319 U.S. at 633–634, 63 S.Ct. at 1183.

■ The teaching of *Barnette* is that the state cannot compel a gesture of adherence to the American flag. Whether under some circumstances the state can forbid gestures of nonadherence, disapproval or contempt is not decided there nor in any other decision brought to the attention of the Court. The statute attacked here, however, makes no effort to limit the facts and circumstances under which such gestures are forbidden. The Court believes that the rationales of *Barnette* and *Stromberg* together compel the conclusion that the punishment of peaceful symbolic acts rejecting the political ideas bespoken by the flag is as

alien to the mandate of the First Amendment as is compulsion to signify adherence. That this statute proceeds, heedless of the guarantees of that amendment, to proscribe such acts determines its invalidity.

■ The state does, of course, have an interest in preventing breaches of the peace, and this decision does not derogate from the power to control disruptions ensuing from public desecration of the flag. Such power is inherent in the sovereignty of states, and legitimate means of exercising it are available. Chaplinsky v. New Hampshire, supra, Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267 (1951). But cf. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Efforts at preventing breaches of the peace have run aground only when they failed to assure that only speech which actually incites to violence, or which is "likely to provoke the average person to retaliation" is forbidden. Chaplinsky v. New Hampshire, supra, 315 U.S. at 574, 62 S.Ct. at 770. As the Supreme Court stated in *Street*, such statutes must be "carefully drawn so as not unduly to impair liberty of expression." Nothing in 52 Del.C. § 532 safeguards against impairment of that liberty when the public order is not threatened. The attempted application to plaintiff belies any such limitation.

■ In *Street*, the Supreme Court commented that "disrespect for our flag is to be deplored no less in these vexed times than in calmer periods of our histroy." We agree. Nevertheless, that the times are difficult and that the issues are emotional calls for more, not less, diligence in safeguarding our cherished freedoms. The often quoted lines from *Barnette* are as apt today as they were in 1943:

"The case is made difficult not because the principles of its decision are ob-

---

8. See Attorney General's opinion to Mr. Roger C. Mowrey, Asst. Supt. Administrative Services, Department of Public Instruction, dated September 17, 1969, on the question "May the practice by students and nonstudents of raising their hands in a 'black glove salute' at public school sporting events legally be restricted?"

scure, but because the flag involved is our own. Nevertheless, we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization.

\* \* \* \* \* \*

We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. When they are so harmless to others or to the State as those we deal with here, the price is not too great. But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.

If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by *word* or *act* their faith therein. If there are any circumstances which permit an exception, they do not now occur to us." (Emphasis added). 319 U.S. at 641–642, 63 S.Ct. at 1187.

The statute here challenged includes within its ambit expression protected by the United States Constitution. The failure of the legislature to regulate with particularity and specificity in this not too clearly charted area of First Amendment rights poses a danger of chilling vigorous and important debate and compels the Court to hold the statute unconstitutional.

■■■■ Plaintiff also requests that defendants be enjoined from proceeding further against him under the act now declared unconstitutional. This Court

finds no reason to assume that the state of Delaware or its officers will attempt to deny plaintiff full protection of his First Amendment rights, nor does it find in the record any of the factors discussed in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335 (1968) and Zwickler v. Koota, supra, necessary to justify such extraordinary relief. No injunction shall issue, without prejudice to plaintiff to request of this Court such relief should subsequent events require it.[9]

Submit order.

9. That injunctions under 42 U.S.C. § 1983 are exceptions to the prohibition against injunction of state court proceedings contained in 28 U.S.C. § 2283 is clear from the recent decision of Grove Press Inc.

v. City of Philadelphia. 418 F.2d 82 (3d Cir. 1969), and the earlier case of Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950).