Linda Marie SUTHERLAND, Roxana Margurite Schultz and Tonia Sue Papke, Plaintiffs,

v.

James N. DeWULF, as State's Attorney of Rock Island County, Illinois, Defendant.

Civ. A. No. RI–331.

United States District Court,
S. D. Illinois, N. D.

Feb. 23, 1971.

Peter Denger, Rock Island, Ill., Thomas M. Kelly, Jr., Davenport, Iowa, for plaintiffs.

James N. DeWulf, State's Atty., Rock Island, Ill., for defendant.

Before PELL, Circuit Judge, POOS, Chief District Judge, and MORGAN, District Judge.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause is before the court on defendant's motion to dismiss. Plaintiffs are seeking declaratory and injunctive relief under 28 U.S.C. §§ 1343(3), 2201, 2202 and 42 U.S.C. § 1983. The complaint requests that the second paragraph of § 6 of chapter 56¼, Illinois Revised Statutes, be declared void on its face as in conflict with the Constitution of the United States; and that the defendant be permanently enjoined from

prosecuting the plaintiffs based upon the aforesaid statute. This three-judge court was convened because the requests for relief properly invoke the provisions of Title 28, United States Code, §§ 2281 and 2284.

Defendant admits by answer on file that the plaintiffs have been indicted for violation of the challenged Illinois statute and that the case, numbered 70 Y 393, is now pending against them in the Rock Island County Circuit Court, General Division. The indictment was returned on May 28, 1970 and recites in pertinent part that the plaintiffs herein

"* * * committed the offense of PUBLICLY MUTILATING A FLAG OF THE UNITED STATES, in that they did * * * knowingly and publicly mutilate a flag of the United States by burning said flag in a public place, to-wit: before the Rock Island Post Office, Rock Island, Illinois, in violation of Section 6, Chapter 56¼ of the Illinois Revised Statutes, 1969."

The indictment is clearly based upon the second paragraph of the subject statute which reads as follows:

"Any person who publicly mutilates, defaces, defiles or defies, tramples or casts contempt upon, whether by words or act, any such flag [the flag of the United States or the State of Illinois] standard, color or ensign shall be punished by a fine of not less than $1,000 nor more than $5,000 or by imprisonment in the penitentiary from one to 5 years or both."

One of the plaintiffs, Roxana Margurite Schultz, moved to dismiss the indictment in the state court and said motion was denied on July 23, 1970. The defendant advised this court that he would not proceed with the pending prosecution until a decision in this cause was made, so no injunction *pendente lite* was considered.

It is apparent that the constitutionality of the statute is the vital issue of law on the pending motion. After receiving briefs from counsel and oral argument on January 15, 1971, several substantial questions are before the court for decision.

## I.

■ The first question that this court must decide is whether this cause presents a proper situation for the application of the abstention doctrine.[1] The defendant has urged this court, both in his brief and in oral argument, to apply the abstention doctrine and thereby to abstain from ruling on the merits of the plaintiffs' federal claims in order to give the state courts an opportunity to vindicate them. The application of the abstention doctrine would involve a discretionary exercise of the court's equity powers. Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Nevertheless, it is clear that the abstention doctrine should not be exercised in this case.

Here, the plaintiffs are attacking the statute on its face, alleging that it is violative of the First Amendment to the Constitution of the United States as applied to the states through the Fourteenth Amendment. The plaintiffs allege that the statute is void on its face because it is overbroad, making various types of conduct illegal which may not be made illegal. The Supreme Court in the recent case of Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), has made it abundantly clear that where the plaintiffs are asserting that a state statute is violative of the First Amendment on its face for overbreadth and where they are requesting declaratory relief as well as injunctive relief, district courts should not abstain from deciding the case on the merits. The

---

1. The defendant raised in his brief the question of whether all the proper parties had been named as defendants. Section 2284 of Title 28 U.S.C. requires that at least 5 days' notice of any hearing involving the constitutionality of a state statute be given to the Governor and Attorney General of the state. At the time of oral argument, however, the defendant conceded that proper notice had been given.

Court in *Zwickler,* speaking through Mr. Justice Brennan, noted that following the Civil War "nationalism dominated political thought" and Congress greatly increased the powers of the federal judiciary. Zwickler v. Koota, *supra* at 246–247, 88 S.Ct. 391. The Court then stated at 248, 88 S.Ct. at 395:

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of federal forum for the hearing and decision of his federal constitutional claims."

The Court, in *Zwickler,* did point out, however, that under "special circumstances," as where the state statute is susceptible to a "construction by the state courts that would avoid or modify the constitutional question," a district court might properly abstain. Zwickler v. Koota, *supra* at 249, 88 S.Ct. at 396; see also Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316 (1964). In view of the broad language of the statute involved in this case, it seems clear that no state court construction is possible that would avoid or render unnecessary the plaintiffs' constitutional challenge of the statute on its face. Furthermore, the court sees no other "special circumstances" which might warrant its abstention herein. The plaintiffs' choice of forum should be respected. This court decides, therefore, that this cause does not present a proper situation for invoking the abstention doctrine and that it will decide the issues presented on their merits.

## II.

■ The second question before the court is whether the statutory provision challenged here is unconstitutional as applied to the three plaintiffs in the state court proceedings. As stated above, the plaintiffs are charged in the state indictment with the "offense of PUBLICLY MUTILATING A FLAG OF THE UNITED STATES, in that they did * * * knowingly and publicly mutilate a flag of the United States by burning it." The statute under which the in-

dictment was returned provided for the punishment of "[a]ny person who publicly mutilates" the flag of the United States. The issue then becomes whether a state may constitutionally punish such burning of the United States flag in a public place. In the opinion of this court a state may punish such an act.

It is clear that the freedoms protected from infringement by the national government by the First Amendment to the Constitution are also protected by the Fourteenth Amendment from invasion by the state governments. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And, there is no doubt that "nonverbal expression" may be "a form of speech" within the meaning and the protection of the First and Fourteenth Amendments. See Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969) (black armbands in school); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178 (1943) (compulsory flag salute); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (display of red flag). There is also no question, however, that First Amendment freedoms are not absolute, and their proper regulation is fully within the powers of the national and state governments. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (draft card burning); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (picketing in front of court house); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766 (1942) (fighting words). The First Amendment does not license individuals to speak "whenever and however and wherever, they please." Adderley v. Florida, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

At the present time, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673 (1968), appears to be the leading Supreme Court opinion setting forth the tests to determine the extent to which government may regulate the exercise of the right to free speech. There, a man named O'Brien burned his selective service registration certificate before a sizable crowd in a protest against war. He was convicted for violating 50 U.S.C. App. § 462(b) for the knowing destruction of his registration certificate. The Supreme Court said at 376-377, 88 S. Ct. at 1678-1679,

> "When 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. * * * [W]e think it clear that a governmental regulation is sufficiently justified * * * if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expressions; and if incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." [2]

Although, in the case at bar, it is by no means clear what the three plaintiffs were trying to express, if anything beyond disrespect, by their public burning of the flag, this court will assume that in such disrespectful demonstration there was a communicative element sufficient to bring the First Amendment into play. Given this assumption, however, the public burning of the flag is not necessarily a constitutionally protected activity since there are "nonspeech" elements involved.

It would not be disputed that the acts of a person who burns his automobile in front of the post office to protest air pollution, or a person who burns his house to protest high real estate taxes, contain significant nonspeech elements, although the person's sole purpose may have been communicative. The state has a sufficient governmental interest in the health, safety, and welfare of its people to prohibit such acts because of their noncommunicative elements even though the First Amendment may have been brought into play. Although perhaps not quite as obvious, the act of setting fire to a flag in a public place has like noncommunicative elements.

The public burning of the flag is clearly not an act of "pure speech." Under O'Brien, then, the question becomes whether in punishing the public burning of the flag (1) the state has any sufficiently important governmental interest in regulating the nonspeech element, (2) the interests are unrelated to the suppression of free expression, and (3) the incidental restriction on free expression is no greater than essential.

This court believes that the state, in providing punishment for the public burning of the flag, has at least two sufficiently important interests which are unrelated to free expression, and that implicit restriction on free speech is minimal. Two valid interests of the state are:

(1) its interest in the preservation of the public peace, and

(2) its interest in the preservation of the flag as a symbol of unity on national ideals and purpose.

The strong interest of any state in the preservation of the public peace is be-

---

2. The *O'Brien* case involved the national government's alleged restriction of free speech. The Court, in delineating the constitutional tests for statutes regulating activity which had both "speech" and "non-speech" elements, listed the requirement that the regulation be within the constitutional power of the Government. United States v. O'Brien, at 377, 88 S.Ct. 1673. This requirement was present in the *O'Brien* case, but not here, because the national government has no power except for that which was granted to it under the Constitution. U.S.Const. Amend. X. Thus, there is a need to find a constitutional source of power for the enactment of any statute by the Congress, which need does not exist when a state statute is involved.

yond reasonable question. A state may under its police power proscribe many forms of conduct which threaten the peace, security and well-being of its inhabitants. The Supreme Court of Illinois, in interpreting the predecessor of the statute here involved which contained essentially the same language, said, "The history of the flag acts of the various States reveals that they were enacted for the purpose of preventing breaches of the peace resulting from improper use and disrespect for the flag." People v. Von Rosen, 13 Ill.2d 68, 70–71, 147 N.E. 2d 327, 329 (1958). Indeed, the desecration and mutilation of the flag by burning it in a public place is an act having a high likelihood to cause a breach of the peace. Taking into account the deeply held and emotional zeal with which so many of our fellow countrymen understandably revere the flag itself, its public desecration by disrespectful burning is an act of incitement and as fraught with danger to the public peace as if a person would stand on the street corner shouting derogatory remarks at passing pedestrians. See Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766 (1942). One has only to read the newspaper in the recent past to know that the public mutilation of the flag is an act which is likely to elicit a violent response from many who observe such acts. The Supreme Court has clearly recognized the inciteful impact of flag desecration in Halter v. Nebraska, 205 U.S. 34, 41, 27 S.Ct. 419, 421, 51 L.Ed. 696 (1907) where it said, "It has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot."

This interest of the states, in preserving the public peace, is totally unconnected to the suppression of free expression. It may be assumed that the violation of the statutory provision involved in this case may not be expected to occur except where there is an attempt to express an idea. Still, the statute's purpose is not to suppress the airing of any idea, but to provide for the preservation of the public peace.

This court also believes that the state has a second interest in punishing the public burning of the flag which meets the constitutional tests set forth in *O'Brien*. That interest is the preservation of the flag as a symbol of national unity on the ideals and purposes of the nation.

History has shown that one of the incidents of nationality is the adoption of a national flag or other symbol. Our own country, early in its history, adopted a flag to represent its existence and sovereignty as a nation. The importance of this flag in developing a sense of loyalty to our nation and its ideals from its incipient stages down to the present is without question. When a state enacts legislation, as in this case, to punish the public mutilation of the flag that has represented this country throughout its history, the state is aiding in the development and extension of a unity of purpose within the nation. In so doing, it necessarily benefits itself, as well as the nation, for the state is indissolubly connected to the Union. Halter v. Nebraska, 205 U.S. 34, 43, 27 S.Ct. 419 (1907). This interest of the State of Illinois in protecting the flag from public mutilation is clearly important enough to justify any incidental limitation on the right to free speech as is involved here. The public mutilation of the flag would "degrade and cheapen the flag in the estimation of the people, as well as to defeat the object of maintaining it as an emblem of national power and national honor." Halter v. Nebraska, *supra* at 42, 27 S.Ct. at 422.

It is also clear that this state interest, like the preservation of the public peace, is unrelated to the suppression of free expression. The statutory provision challenged in this case does not significantly curtail speech. It certainly does not have "the effect of entirely preventing a 'speaker' from reaching a significant audience with whom he could not otherwise lawfully communicate." See

United States v. O'Brien, *supra* at 388–389, 88 S.Ct. at 1685 (Mr. Justice Harlan concurring). Although it is purely speculative what the plaintiffs in this case were trying to express, if anything, this court is certain that they could have conveyed whatever message they may have had in many ways other than burning the flag.

The final requirement under the *O'Brien* test is that the incidental restriction on alleged First Amendment freedoms be no greater than is essential to the furtherance of the interest sought to be protected. Here, it appears clear to this court that the State of Illinois has at least two sufficiently important interests to justify an incidental restriction on free speech. Any restriction, or even possible chilling effect, placed on free speech in furtherance of these valid state interests by punishing the act of knowingly burning the flag in public is minimal. As stated above, the plaintiffs could have conveyed any possible idea that they may have intended to any conceivable audience by means other than burning the flag in a public place. The guarantee of free speech is more concerned with the *substance* of that speech than the *form* of the communication. Cf. United States v. O'Brien, *supra*.

This court is fully satisfied that the statute as applied in this case is constitutional and that its application here fulfills the requirements established in *O'Brien*.

The plaintiffs in their brief discussed and quoted at length the Supreme Court opinions in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). These cases are clearly distinguishable. In *Barnette*, the Court held that a rule requiring public school children to salute the flag of the United States while reciting the pledge of allegiance under penalty of expulsion from school was unconstitutional. There, the Court considered the compulsory aspect of the school board

requirement to infringe the students' rights to be intellectually and spiritually free. The Court said at 640, 63 S.Ct. at 1186:

> "National unity as an end which officials may foster by persuasion and example is not in question. The problem is whether under our Constitution compulsion as here employed is permissible means for achievement."

In *Stromberg*, the Court held that a state could not constitutionally prohibit the display of any red flag, banner or badge in any public place as a sign or symbol of "opposition" to organized government. In that case the statute was aimed at the *communication* itself in opposition to organized government, rather than the situation here where the application of the statute is neither aimed at nor preventive of the communication of any intelligible idea.

### III.

The final question presented to the court by this cause is whether the "void by overbreath" doctrine should be applied and, if so, whether the statute is unconstitutionally overbroad. The plaintiffs herein have argued strongly that the statute under which they are being prosecuted should be struck down because it is void on its face for overbreadth. This court holds, however, that this doctrine is not applicable in this case and, therefore, the question of whether the statute might be unconstitutionally overbroad in some other situation is not reached.

The overbreadth doctrine is a legal concept formulated by the Supreme Court, which allows a defendant in a criminal case to challenge a criminal statute on its face as unconstitutionally overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities" which are protected by the First Amendment. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). The rationale for the doctrine

is based in our country's firm belief in the importance of the First Amendment rights to a free society. Fear of the "chilling effect" of overbroad penal statutes on First Amendment rights has persuaded the Supreme Court that the law should not tolerate statutes "susceptible of sweeping and improper application." N. A. A. C. P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) The Court has determined that the excise of particular invalid applications is not a sufficient protection in some cases and it is said to have "employed the First Amendment overbreadth doctrine to short circuit the process by invalidating the statute and putting it up to the legislature for redrafting." Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 845 (1970). Furthermore, a statute challenged under the overbreadth doctrine may be held invalid "whether or not the record discloses that the petitioner has engaged in privileged conduct." N. A. A. C. P. v. Button, 371 U.S. 415, 432, 83 S. Ct. 328, 337 (1963); see also Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Thornhill v. Alabama, 310 U.S. 88, 98, 60 S.Ct. 736 (1940).

However, the Supreme Court, in Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), had before it a statute with terms nearly identical to those of the statute involved in this case. It is to be noted that the criminal information in Street was not drawn so narrowly as the indictment before the court here. The information there charged the defendant with

> " 'the crime of Malicious Mischief in that [he] did willfully and unlawfully defile, cast contempt upon and burn an American Flag * * * under the following circumstances: * * * [he] did willfully and unlawfully set fire to an American Flag and shout, "If they did that to Meredith, We don't need an American Flag." ' " Street v. New York, supra at 579, 89 S.Ct. at 1359.

The Court, in Street, did not decide the question of whether the statute was overbroad on its face. Instead, it held that the statute "was unconstitutionally applied * * * because it permitted him to be punished merely for speaking defiant or contemptuous words about the American flag." Street v. New York, supra at 581, 89 S.Ct. at 1360. The Court was unable to determine for certain from the record before it that the appellant's words were not the independent cause of his conviction, and, therefore, the specific question seen by the Court was

> "whether, in the circumstances of this case, New York may constitutionally inflict criminal punishment upon one who ventures 'publicly [to] defy * * or cast contempt upon any American flag by words * * *.' " Street v. New York, supra at 590, 89 S.Ct. at 1364.

The Court held that it could not. In so holding, the Court, speaking through Mr. Justice Harlan, specifically stated,

> "[I]n taking this course we resist the pulls to decide the constitutional issues involved in this case on a broader basis than the record before us imperatively requires." Street v. New York, supra at 581, 89 S.Ct. at 1360.

Thus, the Supreme Court was presented with the question of whether a statutory provision, nearly identical to the one challenged in the present case, was void on its face for overbreadth. It chose to limit its holding to the statute as applied and refused to make a broader holding. This court views that Supreme Court refusal to be of controlling significance to the question of overbreadth presented in this case.

In Street, the clearly expressed fear of the Court was that the defendant might have been convicted for the words he uttered in connection with his action involving the flag. It was the Court's holding that Mr. Street could not be constitutionally punished for those words and for that reason the case was reversed and remanded. In other words, the

Court felt that Street may have been convicted for privileged activity under the First Amendment.

In the case at hand, this court has already determined that the act for which the plaintiffs have been indicted is not privileged conduct and may be constitutionally punished by the State. We may assume, *arguendo*, that the statutory provision challenged in this case is susceptible of sweeping and improper application. That assumption would also apply to the statutory provision found in *Street*. It would seem to this court to be an anomaly, indeed, to apply the overbreadth doctrine in this case to void the statute where conduct of the parties challenging the statute is clearly *not* privileged, but to find the doctrine not applied in *Street* where the conduct of the person challenging a nearly identical statute was privileged. It simply does not make sense to this court to apply the doctrine where the activity is unprivileged, when it was not applied by the Supreme Court (even though raised and considered) in a similar case where part of the activity involved was found constitutionally protected.

The majority opinion in *Street* gave no indication of why the overbreadth doctrine was not applied there. This court does not presume to say, but it is clear that it was not an oversight. It may be that the Supreme Court considered the statute involved in *Street* to be severable. This court believes that the provisions of the statute challenged there, as well as those of the statute here, could be easily severed and narrowed through the excise of invalid applications. A statute should not fall *in toto* when it can readily be truncated to adhere to constitutional limits. Perhaps the *Street* opinion is a recognition that current statements of the overbreadth doctrine are themselves overbroad. Any court should avert when reasonably possible the confrontation of judicial and legislative powers which arise when a law is held void on its face. A court should not decide constitutional questions which are not at least directly related to the specific circumstances before it. In any event, the clear implication of *Street* which this court sees is that the overbreadth doctrine is simply not applicable to a statutory provision like the one before this court.

The four dissenters in *Street* likewise, quite apparently did not consider that the case was a proper one for the application of the overbreadth doctrine. The Court was apparently unanimous on this point. All of the dissenting Justices believed that the defendant had not been convicted for his words at all, but, instead, that he had been convicted for the burning of the United States flag in public, and they all expressed their decision to sustain that conviction under the challenged statute. The reason they did not reach the overbreadth issue is likewise not stated but it may be found in *Dombrowski*. There, the Court implied that perhaps a statute should not be declared void on its face where flagrant conduct is involved that would obviously be prohibited under any construction of the statute. Dombrowski v. Pfister, *supra* at 491–492, 85 S.Ct. at 1123–1124. It seems worthy of note to this court that Mr. Justice Black, long a vigorous defender of maximum freedom of speech, dissented in *Street*. In his strong dissenting opinion, he did not mention the possible application of the overbreadth doctrine, but stated:

> "It passes my belief that anything in the Federal Constitution bars a State from making the deliberate burning of the flag an offense." Street v. New York, *supra* at 610, 89 S.Ct. at 1374.

The court, here, is cognizant of the very recent District Court case of Hodsdon v. Buckson, 310 F.Supp. 528 (D.C. Del.1970), in which a three-judge court held a statutory provision that was nearly identical to the one involved in this case void on its face for unconstitutional overbreadth. The facts in that case, however, were significantly different from those in the case before this court. There, the activity for which the plaintiff was being prosecuted was merely the displaying of the United States flag in front of his residence at half mast

and to the left of the United Nations flag also displayed there. It seems to this court that while such display is arguably disrespectful, it is not, as here, directly and physically destructive of the flag itself. It should also be noted that the activity in *Hodsdon*, by expressing an intelligible idea, is closely akin to pure speech. Thereby the activity involved itself becomes privileged. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Regardless of its rationale, however, that decision is not controlling here, and this court holds that the overbreadth doctrine should not be applied in the instant case.

The plaintiffs have asserted several other grounds in their complaint for declaring the subject statutory provision unconstitutional. Those grounds included alleged violation of the First Amendment's prohibition of establishment of or preventing free exercise of a religion and the Eighth Amendment's prohibition of cruel and unusual punishment. The plaintiffs did not discuss such grounds in their brief nor in their oral argument. This court does not consider that they raise any substantial questions in the context of this case so as to deserve discussion here. Likewise Long Island Vietnam Moratorium Committee v. Kahn, 437 F.2d 344 (CA 2, Dec. 24, 1970), cited by plaintiffs, is clearly distinguishable on a number of points considered above. Parker v. Morgan, 322 F.Supp. 585 (Dist.Ct., W.Dist.N.C., Jan. 22, 1971), is also distinguishable on the facts and in no sense suggestive of the application of the overbreadth doctrine here. The court there said, "We think the line must be drawn at the point of contemptuous physical contact with the clearly defined flag and that physical protection of the flag itself is the outermost limit of the state's legitimate interest."

In summary, this court holds that the abstention doctrine should not be applied here because the statute is being attacked on its face for overbreadth. Fur-

ther, the challenged statute as applied is not unconstitutional because the intentional and disrespectful burning of the United States flag in a public place is conduct which a state may constitutionally punish. Finally, in view of the *Street* case, this court holds that the overbreadth doctrine is not applicable to the statutory provision challenged in this case.

Accordingly, it is ordered that defendant's motion to dismiss be and same is hereby granted, and plaintiffs' requests for both injunctive and declaratory relief be and same are hereby denied.