**Valerie GOGUEN, Petitioner,**

v.

**Joseph A. SMITH, Sheriff of Worcester County, Respondent.**

**Misc. Civ. No. 72-22 LC.**

United States District Court,
D. Massachusetts.

May 25, 1972.

Evan T. Lawson, Glickman, Lawson & Tenney, Boston, Mass., for petitioner.

Charles E. Chase, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND OPINION

LEVIN H. CAMPBELL, District Judge.

### I

Petitioner applies for a writ of habeas corpus to obtain release from a six months sentence to the House of Correction imposed after his conviction in the Worcester County Superior Court. The conviction was upon a complaint that he "did publicly treat contemptuously the flag of the United States" in violation of G.L. c. 264, § 5.[1] The conviction was

---

1. § 5. Flag; penalty for misuse

Whoever publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the United States or of Massachusetts, wheher such flag is public or private property, or whoever displays such flag or any representation thereof upon which are words, figures, advertisements or designs, or whoever causes or permits such flag to be used in a parade as a receptacle for depositing or collecting money or any other article or thing, or whoever exposes to public view, manufactures, sells, exposes for sale, gives away or has in possession for sale or to give away or for use for any purpose, any article or substance, being an article of merchandise or a receptacle of merchandise or articles upon which is attached, through a wrapping or otherwise, engraved or printed in any manner, a representation of the United States flag, or whoever uses any representation of the arms or the great seal of the commonwealth for any advertising or commercial purpose, shall be punished by a fine of not less than ten nor more than one hundred dollars or by imprisonment for not more than one year, or both. Words, figures, advertisements or designs attached to, or directly or indirectly connected with, such flag or any representation thereof in such manner that such flag or its representation is used to attrach attention to or advertise such words, figures, advertisements or designs, shall for the purposes of this section be deemed to be upon such flag. Notwithstanding the foregoing, there may be attached to the staff bearing a flag of the United States or of Massachusetts belonging to an organization of veterans of the Civil

affirmed by the Supreme Judicial Court. Commonwealth v. Goguen, 1972 Mass. Ad.Sh. 303, 279 N.E.2d 666.

At the time he filed this petition, (February 23, 1972), petitioner had very recently commenced serving the sentence imposed by the Superior Court. The sentence had previously been stayed by the Massachusetts Supreme Judicial Court pending consideration of his state appeal. On March 3, 1972, this Court released the petitioner on bail pending further consideration of his case.

The defendant has filed a return and a Motion to Dismiss the Petition.

The case is submitted by agreement on a record consisting of the record and briefs presented to the Supreme Judicial Court.

The issues were argued by the parties, and briefs were submitted. After consideration, it is my opinion that the writ must be granted.

## II

On January 30, 1970, a Leominster Police Lieutenant observed the petitioner standing with a group of persons on Main Street in Leominster. The petitioner was wearing a short coat, blue jeans and shoes. A cloth American flag, approximately 3 x 5 or 4 x 6 inches was sewn to the blue jeans in the vicinity of the left portion of the petitioner's buttocks. When the Lieutenant questioned the petitioner, the other persons present were laughing.

On the same date another police officer saw the petitioner "walking in the downtown business district of Leominster, wearing a short coat, casual type pants and a miniature American flag sewn on the left side of his pants."

The petitioner was arrested upon a warrant issued by the Leominster District Court. On January 31, 1970, a complaint was issued that the petitioner "on the thirtieth day of January . . . at Leominster did publicly treat contemptuously the flag of the United States in violation of G.L. c. 264, § 5 as amended."

The petitioner was tried and convicted on this charge in the District Court.

He appealed to the Superior Court, where he was tried before a district court justice sitting by designation and a jury on April 14 and 15, 1971. At the outset of trial in the Superior Court, the petitioner presented and argued a Motion to Dismiss the Complaint on the ground that G.L. c. 264, § 5, is unconstitutional on its face and as applied to him under the First and Fourteenth Amendments of the United States Constitution. In the motion, the petitioner asserted that the statute violated the right to due process "in that it is overly broad, impermissibly vague and incapable of fair and reasonable interpretation by public officials." The Motion to Dismiss was denied by the trial judge. A subsequent motion for directed verdict was also denied after argument.

War, to a camp of the United Spanish War Veterans, to a post or department of The American Legion, or to a post or department of the Veterans of Foreign Wars of the United States, or to a post or department of the Jewish War Veterans of the United States, or to a camp or department of the Sons of Union Veterans of the Civil War, or to a barracks or department of the Veterans of World War I of the U.S.A., or belonging to or used to in the service of the United States or the commonwealth, a streamer having inscribed thereon the names of battles and the name and number of the organization to which such flag belongs. For the purposes of this section, a flag shall be deemed to continue to belong to any organization of veterans hereinbefore specified, although such organization has ceased to exist, during such time as it remains in the lawful ownership or custody of any other of the aforesaid organizations or of the commonwealth or of any political subdivision thereof, or of any patriotic or historical society incorporated under the laws of the commonwealth or determined by the adjutant general to be a proper custodian thereof.

At the trial, the two police officers who had observed the petitioner's conduct on January 30 testified to the facts already outlined.

The defense presented as a witness a so-called vexillologist.[2] Through him, efforts were made to introduce into evidence various contemporary uses in magazines and newspapers and on products of the "actual design of the United States flag and the stars and stripes pattern," including ties made of flag material, pants with a stars and stripes design, a footstool with a flag on the seat, and a bathing suit of flag design. This evidence was offered to assist the jury in determining whether the defendant's treatment of the flag was contemptuous by contemporary standards. Objections made by the Commonwealth to introduction of the foregoing were sustained by the trial judge.

The defense vexillologist testified that the flag the defendant was alleged to have been wearing conformed to official standards.

The trial judge refused the defendant's request that he instruct the jury that in order to find the defendant guilty they must find that the flag alleged to have been treated contemptuously was an official flag of the United States within the meaning of, and as defined by Executive Order number 10834, issued by the President of the United States pursuant to Title 4 United States Code, chapter one, section one, and set forth therein. (It is not entirely clear what instructions the judge gave. It would appear from page 2 of the Bill of Exceptions that he left it to the jury to determine what the term "flag of the United States" meant).

The jury returned a verdict of guilty and sentence was entered thereon.

A timely Bill of Exceptions was thereafter prepared, and an amended bill allowed by the trial judge; and the petitioner's exceptions were heard by the Supreme Judicial Court. In its rescript opinion, the Court rejected the petitioner's "claim that the statute is on its face or as applied to him a restraint upon the right of freedom of speech guaranteed by the First Amendment." While the Court did not refer specifically in its opinion to the Fourteenth Amendment, it stated, "[W]e see no vagueness in the statute as applied here." The Court also ruled that rejection of the vexillologist's evidence as to contemporary use and treatment of the flag was not an abuse of discretion.

No contention is now made that the petitioner has not exhausted state remedies, nor that the constitutional issues presented here were not raised appropriately in state proceedings.

### III

Flag cases have proliferated in the past several years. Most deal with situations carrying overtones of political protest. Others, like the present one, seem to stem more from the contemporary use of the national flag as an object of youth fashion and high camp: one sees the flag on ski-sweaters, shirts, hats, helmets, shopping bags, automobiles and jackets, often in conjunction with no discernable set of beliefs. These new, informal usages, at variance with traditional flag etiquette, add to the difficulty of interpreting older flag laws which, like the Massachusetts law, condemn one who treats the flag contemptuously, but do not define exactly what is meant.

In this case, two issues are uppermost. First, to what extent the Commonwealth of Massachusetts may constitutionally regulate conduct towards the flag of the United States. Second, if it may regulate such conduct, whether the penal statute under which the petitioner was convicted is sufficiently limited in scope measured by the standards of the First and Fourteenth Amendments.[3]

2. A word apparently denoting an expert on flags, from the Latin velum (cloth, sail, veil) and the word vexillum (a standard).

3. The most recent treatment of the constitutionality of a conviction for flag desecration by the Supreme Court is in

Both questions arise because, as is now generally agreed, many types of flag use and flag alteration are "symbolic expression."[4] Only as necessary to further a substantial or important governmental interest may the state curtail symbolic expression. See United States v. O'Brien, 391 U.S. 367, 376–377, 88 S. Ct. 1673, 20 L.Ed.2d 672 (1968).

In the recent flag cases, courts have identified two governmental interests as authorizing certain types of flag regulation.

One is the state's undoubted interest in preventing breaches of the peace.[5] However, that interest may be exercised only in narrowly drawn legislation directed towards conduct which, under the specific circumstances of the moment, may incite retaliation. See Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Unquestionably an insult to the national flag may sometimes threaten to provoke a breach of the peace. But often it may not. (In the present case, for example, there was no evidence that petitioner's conduct threatened a breach of the peace; and the Massachusetts statute does not require proof that a breach of the peace is imminent. Accordingly, a valid state interest sufficient to sustain the petitioner's conviction cannot be premised upon the state's authority to prevent breaches of the peace.)

A broader, and, I think, more pertinent ground for flag legislation is to be found in the state's interest in preventing the desecration of our symbol of national unity. The flag reflects the common ideal which binds us together. It stands for no particular ideology other than the general loyalty and patriotism of all citizens. That loyalty and patriotism may be expressed in dissent as well as in agreement with the majority. To require one not to mutilate or defile the flag is merely to require him to refrain from physically insulting a symbol venerated by the vast majority of his countrymen. The state may exercise some degree of control over shocking conduct, at least where the "shock effect" stems from physical acts remote from the articulation of ideas. See Street v. New York, 394 U.S. 576, 592–593, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

In any event, a state, in my view, has an interest sufficient to justify a statute narrowly drawn to prohibit mutilating, desecrating, or otherwise physically damaging the flag.[6]

Such a narrowly drawn statute was upheld in Hoffman v. United States, supra, 445 F.2d 226. The Court of Appeals for the District of Columbia approved the federal flag desecration statute (18 U.S.C. § 700), but took pains to interpret its language so as to prohibit only acts of physical desecration and mutilation visited directly upon the flag itself. The court said, at 228,

> The right of symbolic expression of opinion, not excluded from the protection of the First Amendment, is involved in this case. . . . It follows that in order for this statute to avoid possible conflict with the Amendment, the curtailment of expression goes no

Street v. New York, 394 U.S. 576, 89 S. Ct. 1354, 22 L.Ed.2d 572 (1969), holding that contemptuous language directed at the flag could not be constitutionally punished under a state statute. The court left unresolved whether the state could punish flag burning.

4. Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970). Hoffman v. United States, 445 F.2d 226 (D.C.Cir.1971). Crosson v. Silver, 319 F.Supp. 1084 (D.Ariz.1970). Parker v. Morgan, 322 F.Supp. 585 (W.D. N.C.1971); Hodsdon v. Buckson, 310

F.Supp. 528 (D.Del.1970). Sutherland v. DeWulf, 323 F.Supp. 740 (S.D.Ill. 1971); Thoms v. Smith, 334 F.Supp. 1203 (D.Conn.1971).

5. People v. Lindsay, Ill., 282 N.E.2d 431. See Thoms v. Smith, supra, 334 F.Supp. 1211.

6. Hiett v. United States, 415 F.2d 664 (5th Cir. 1969). People v. Cowgill, 274 Cal. App.2d Supp. 923, 78 Cal.Rptr. 853 (1969); appeal dismissed, Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970).

further than the language of the statute clearly requires.

The legislative history of the federal act, enacted in 1968, was found to show a Congressional intention to condemn only the physical dishonor or destruction of the flag. The narrow language was said to be deliberate, to take account of Supreme Court decisions expanding the scope of First Amendment protections since the decision in Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907).[7]

While courts have tended to sustain statutes punishing physical desecration of the flag, they have in recent years taken a different view of older state statutes which, like the Massachusetts flag statute, go well beyond prohibiting physical mutilation and destruction.

These latter typically contain language making it a crime to cast contempt upon the flag by word or deed (Crosson v. Silver, supra; Parker v. Morgan, supra; Hodsdon v. Buckson, supra; cf. Sutherland v. DeWulf, supra) or to "misuse" the flag (Thoms v. Smith, supra).

The strong tendency in recent federal decisions is to hold that such statutes are overbroad, in that they improperly attempt to regulate mere verbal insults directed at the flag, non-verbal insults of a like nature, and breaches in flag etiquette. As the three-judge district court said in Parker v. Morgan, supra, 322 F.Supp. at 589, 590:

> Protection of the flag, qua flag, is one thing. To go further and forbid expression of attitudes by a gesture or even facial expression is quite another. . . . The right of protest includes the right to be derisive, disdainful, contemptuous and even defiant of government and what may be thought to be in a given context its symbols of authority.

> &ast; &ast; &ast; &ast; &ast; &ast;

We do not doubt the right of a citizen, however misguided, to turn thumbs down at the flag, or stick out his tongue, or salute it with a clenched fist, or otherwise express his derision and contempt for what to him it may represent. [footnote omitted]

We think the line must be drawn at the point of contemptuous physical contact with the clearly defined flag and that physical protection of the flag itself is the outermost limit of the state's legitimate interest.

There is, I believe, much practical good sense in an accommodation which recognizes the state's right to regulate physical desecration while declining to permit it to enter the murky area where speech and attitudes are far more involved.

Focusing upon whether the Massachusetts statute is sufficiently limited in scope so as not to prohibit constitutionally protected conduct, it would seem apparent from what has already been said that it presents serious difficulties. Even if petitioner's silly conduct might be punished under a more narrowly drawn flag statute,

> the transcendent value to all society of constitutionally protected expression is deemed to justify allowing "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Gooding v. Wilson, 405 U.S. at 521, 92 S.Ct. at 1105 (1972).

■ As already stated, the Massachusetts statute does not merely punish acts of contempt towards the flag which threaten to cause a breach of the peace. It punishes anyone who publicly treats contemptuously the flag regardless of surrounding circumstances.[8]

Nor does the Massachusetts statute (in contrast to the federal statute)

---

7. In the *Hoffman* case, the court held that the defendant had not violated the federal act by wearing a shirt resembling the flag.

8. In any event, there was no evidence of a threatened breach of the peace in this case. The evidence shows only that the people near the petitioner were laughing.

merely punish those acts of contempt amounting to physical mutilation, defacement, burning or the like. Rather, it punishes anyone who "publicly . . . treats contemptuously" the flag.

The statutory language, on its face, condemns a spectrum of expression and conduct much of which the First Amendment, as it is now interpreted, protects. See Gooding v. Wilson, supra.

The words "treats contemptuously" can reasonably be read to permit prosecution for verbal insults to the flag, and non-verbal insults, such as turning thumbs down or sticking out one's tongue at the flag. However, the state, under the First Amendment, lacks the power to punish such actions. *Street*, supra; see *Parker*, supra.

In addition (especially these days when flags are commonly displayed on hats, garments and vehicles), the words "treats contemptuously" do not provide a readily ascertainable standard of guilt. The words leave conjectural, in many instances, what conduct may subject the actor to criminal prosecution. See Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). It is not clear, for instance, to what extent they prohibit any public deviation from formal flag etiquette—for example, a failure to remove one's hat when the flag passes. At least until recently, the unauthorized display of the flag on a jacket would have been regarded by many as contemptuous. Is such conduct today contemptuous within the meaning of the statute? Would it be a violation of the statute to sew the flag on one's pants leg or jacket? Is the statute violated if the flag is flown in a position subordinate to the United Nations flag? (Hodsdon v. Buckson, susupra, 310 F.Supp. at 535.) Is a flag worn on a shirt by a veteran permissible, but a flag worn upside down on a shirt by a yippie or a peace marcher contemptuous? Do the attitude and politics of the person wearing the flag determine whether its display is contemptuous? If so, would not the statute punish attitudes and views rather than specific conduct?

As worded, the statute sets "a net large enough to catch all possible offenders," leaving it to the police and the courts to pick and choose whom to prosecute and convict. Papachristou v. City of Jacksonville, supra. It may be said to encourage arbitrary and erratic arrests and convictions.

In Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970), the Court said, at 348,

> . . . if there is a reading of a penal statute which authorizes local law enforcement officers to prosecute traditional First Amendment activity, such a statute is unconstitutionally over broad, despite the fact that the statute may also purport to prosecute activity not entitled to constitutional protection . . .

An overly-broad and vague statute permits selective law enforcement. It "leaves wide open the standard of responsibility, so that it is easily susceptible to improper application." Gooding v. Wilson, supra, 92 S.Ct. at 1109.

The present statute may have been little used in borderline cases. The good sense of Massachusetts law enforcement authorities has doubtless, on most occasions, been a sufficient shield against its abuse. But G.L. c. 264, § 5 can

> withstand . . . attack upon its facial constitutionality only if, as authoritatively construed by [the state] courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments . . . Gooding v. Wilson, supra, 92 S.Ct. at 1105.

No such authoritative construction by a state court exists.

I conclude that the petitioner's conviction was under a statute with applicable provisions so encompassing and vague as

**168**

to violate the First and Fourteenth Amendments.

Accordingly, an order is to be entered that the writ of habeas corpus issue and that the petitioner be released from the defendant's custody.