[No. 854-1. Division One—Panel 1. November 15, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD OMAND
SPENCE, *Appellant.*

David Allen, for appellant.

Christopher T. Bayley, Prosecuting Attorney, and James E. Warme, Deputy, for respondent.

HOROWITZ, C.J.—Defendant, after jury trial, was convicted of violating RCW 9.86.020 (1) and (2), which forbids the improper use for exhibition or display of any flag of the United States as therein defined. On appeal he contends his conviction should be reversed and the charge dismissed because the statute violates his First Amendment rights. For the reasons next stated, we uphold his contention.

RCW 9.86.020 (1) and (2) provide:

No person shall, in any manner, for exhibition or display:

(1) Place or cause to be placed any word, figure, mark, picture, design, drawing or advertisement of any nature upon any flag, standard, color, ensign or shield of the United States or of this state, or authorized by any law of the United States or of this state; or

(2) Expose to public view any such flag, standard, color, ensign or shield upon which shall have been printed, painted or otherwise produced, or to which shall have been attached, appended, affixed or annexed any such word, figure, mark, picture, design, drawing or advertisement.

RCW 9.86.010 defines the word flag as follows:

The words flag, standard, color, ensign or shield, as used in this chapter, shall include any flag, standard, color, ensign or shield, or copy, picture or representation thereof, made of any substance or represented or produced thereon, and of any size, evidently purporting to

be such flag, standard, color, ensign or shield of the United States or of this state, or a copy, picture or representation thereof.

The facts are these: Defendant, by the use of removable plastic tape, superimposed a peace symbol upon an American flag in his possession. He then displayed the flag containing the peace symbol to public view by hanging it out of his apartment window in Seattle, Washington, in an upside-down position. The plastic tape peace symbol consists of black lines forming a circle, which in turn contains black straight lines in much the form of an inverted trident. Defendant testified that his purpose in placing the peace symbol upon the flag displayed was to associate the flag with peace instead of war and violence, and to serve as a protest to the invasion of Cambodia and the killings at Kent State University, both of which events had occurred a few days before. He testified that he did not know that placing the plastic tape peace symbol upon the flag was against the law.

■ ■ The state does not contend the information charged defendant with desecrating the flag—flag desecration being prohibited by RCW 9.86.030 as amended. Had flag desecration been the intended charge, it would have been necessary to include an allegation, in substance or effect, that defendant had committed "acts . . . done knowingly and intentionally with an intent or purpose of defiling and desecrating [the flag] or holding it publicly up to contempt." *State v. Turner*, 78 Wn.2d 276, 281, 474 P.2d 91 (1970). It is not claimed that such an intent was alleged in the information, nor is such intent relied upon to uphold the conviction below under RCW 9.86.020. Indeed, the state successfully contended below that intent to violate the statute under which the information was drawn was an unnecessary ingredient of the offense charged. We therefore confine ourselves, as we must, to a consideration of the actual charge on which defendant was convicted. U.S. Const., amend. 6; Const. art. 1, § 22 (amendment 10). As stated in *State v. Frazier*, 76 Wn.2d 373, 456 P.2d 352 (1969), at 376:

"He cannot be accused of one crime and convicted of another."

A flag may be considered from two aspects: (1) as a physical object, and (2) as a symbol of ideas. As a physical object, its ownership is subject to the proper exercise of the state's police power (*see* Cross, *The Diminishing Fee*, 20 Law & Contemp. Prob. 517 (1955), cited in *Sutherland v. Southcenter Shopping Center, Inc.*, 3 Wn. App. 833, 847 n.6, 478 P.2d 792 (1970)), and such ownership is protected by the Fifth and Fourteenth Amendments implemented, for example, by laws relating to trespass. As a symbol, its regulation is also subject to the proper exercise of the state's police power, but the use of the symbol is protectable, if at all, by the First and Fourteenth Amendments which provide a restraint upon the exercise of police power. *See Halter v. Nebraska*, 205 U.S. 34, 51 L. Ed. 696, 27 S. Ct. 419 (1907); *State v. Oyen*, 78 Wn.2d 909, 913, 480 P.2d 766 (1971); Annot., 22 L. Ed. 2d 972 (1970).

The basic question here involves a determination of whether the constitutional right of free speech (U.S. Const. amend. 1; Const. art. 1, § 5;[1] *Adams v. Hinkle*, 51 Wn.2d 763, 322 P.2d 844 (1958)) is violated by RCW 9.86.020(1) and (2) enacted under the state's police power, either as that statute is applied to defendant or on account of overbreadth.

Flags have a long and worldwide history. 9 Encyclopedia Britannica 398, *Flags* (22d ed. 1970); E.M.C. Barraclough, Flags of the World (Rev. ed. 1965); Quaife, The Flag of the United States (1942). They serve a variety of functions. Thus, they may be used as a reminder of an historic past, a mirror of a peaceful or turbulent present, and a promise of conditions hoped for or of events to come. The American flag is similarly used. The American flag, however, has its own communicating function. Its content finds expression and use based on American experience, American values

---

[1]Because the First Amendment provides an adequate basis for the disposition of the question involved, it is unnecessary to determine whether article 1, section 5 compels a like conclusion. Reference to the American flag applies by a parity of reasoning to the state flag.

and American outlook. The flag does not bear a single message, orthodox or unorthodox; nor is it the sole preserve of government or the sole preserve of any one person, group or interest. It does not serve to freeze past or existing institutions or past or existing points of view. Born out of the vicissitudes of change, and itself a striking and eloquent manifestation of that change, it would be strange indeed if it proved inhospitable to the constitutionally protected appeal for change by lawful means. Hence, the flag is both an appeal for loyalty to existing America, its policies and its ideals, and an invitation for peaceful change to bring America closer to heart's desire. In short, the American flag is an identifying, history-preserving and ideological symbol. As stated in *Parker v. Morgan,* 322 F. Supp. 585 (W.D. N.C. 1971), at 588:

> If the flag says anything at all, and we agree it often may in a given context, we think it says everything and is big enough to symbolize the variant viewpoints of a Dr. Spock and a General Westmoreland. With fine impartiality the flag may head up a peace parade and at the same time and place fly over a platoon of soldiers assigned to guard it.
> . . . Sometimes the flag represents government.
> . . . Always it represents America—in all its marvelous diversity.

It is understandable that a concern for the preservation of the flag's symbolism should find expression, all over the land and in a variety of contexts, in federal and state statutes designed to protect the American flag and representations of that flag against both misuse and disrespect. *See e.g.,* 4 U.S.C.A. §§ 1-3; 36 U.S.C.A. §§ 172-178, 182; RCW 9.86.010-.070 (Uniform Flag Law); RCW 9.05.100-.140. Indeed, a body of law—albeit somewhat small—has developed with respect to how statutory enactments dealing with the flag should be regarded. *See generally,* 35 Am. Jur. 2d *Flags* §§ 1-5 (1967, Supp. 1971); 36A. C.J.S. *Flags* §§ 1-6 (1967, Supp. 1971); Annot., 22 L. Ed. 2d 972 (1970); Note, *Exploiting the American Flag: Can the Law Distin-*

*guish Criminal from Patriot?*, 30 Maryland L. Rev. 332 (1970).

 From the case law it is clear that even defiant or contemptuous words spoken of the flag are protected free speech; and the fact that the words would be offensive to the sensibilities of the average citizen is not a controlling consideration. *Street v. New York*, 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354 (1969). Thought and ideas, however, may be conveyed by nonspeech symbols as well as by words. Such symbols when so used constitute symbolic speech which is protected by the First Amendment. *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969). Furthermore, a statute mandating respect for the flag, as in the case of a compulsory flag salute, is a violation of the First Amendment. *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178, 147 A.L.R. 674 (1943). Even the display of an alien red flag symbolizing opposition to the American government is constitutionally protected free speech. *Stromberg v. California*, 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, 73 A.L.R. 1484 (1930).

It might be suggested that the state has the right to regulate the nonspeech aspects of conduct as long as the regulation does not impair or regulate speech itself. *Cf., Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 93 L. Ed. 834, 69 S. Ct. 684 (1949); *Adderley v. Florida*, 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242 (1966). This view is the rationale, for example, of the majority opinion in *People v. Radich*, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970), affirmed per curiam by an equally divided court, 402 U.S. 989, 28 L. Ed. 2d 287, 91 S. Ct. 1217 (1971). Whatever workability this rule may possess in the presence of actual speech, the rule may well be unworkable in the presence of conduct which itself is constitutionally protected symbolic speech and is nonseverable therefrom. Thus, the wearing by high school students of black armbands to protest American policy in Vietnam is conduct and is nonseverable from the symbolic speech exemplified by the arm-

bands (*Tinker v. Des Moines School Dist., supra*); and a compulsory flag salute statute which regulates or mandates conduct also runs afoul of constitutional provisions which prevent government from prescribing what is "orthodox in politics, nationalism, religion, or other matters of opinion . . ." *West Virginia State Bd. of Educ. v. Barnette, supra,* Mr. Justice Jackson at page 642. *See also Stromberg v. California, supra,* and *Gregory v. Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946 (1969).

█ It has also been pointed out that the constitutional right of free speech is not absolute and does not automatically and mechanically prevail against statutes protecting legitimate governmental interests by prohibition or regulation of designated conduct with respect to the flag. Thus, a statute may prohibit the use of a flag for commercial advertising purposes (*see Halter v. Nebraska, supra*); or a statute may protect the dignity of a foreign flag pursuant to an obligation imposed by international law (1 L. Oppenheim, International Law § 121 (7th ed. 1948); 2 G. Hackworth, Digest of International Law § 127 (1941); G. Wilson, *Respect for National Flag,* 29 Am. J. of Int'l Law 662 (1935)); or a statute may protect the flag if so to do protects the safety of the state against a clear and present danger. *See Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Schenck v. United States,* 249 U.S. 47, 63 L. Ed. 470, 39 S. Ct. 247 (1919); *State ex rel. Holcomb v. Armstrong,* 39 Wn.2d 860, 239 P.2d 545 (1952). It is conceivable, although we do not determine the matter, that a statute may properly seek to preserve a privately owned flag of historic importance; or a statute may protect the identifying function of the flag at home and abroad against substantial impairment; or a statute may regulate the form of a military salute in America's armed forces. Furthermore, it may be assumed that a statute may properly protect the encouragement of love of country. *See Halter v. Nebraska, supra.* These are independent and protectable governmental interests.

The problem of reconciling protection of legitimate gov-

ernmental interests with the demands of free speech calls for an evaluation of competing interests and the striking of a balance that will mark the boundaries between what is constitutionally permissible and what is constitutionally impermissible. *See State v. Oyen,* 78 Wn.2d 909, 919-20, 480 P.2d 766 (1971). The doctrine of balancing was articulated in *United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968), a draft card burning case. *O'Brien* held that before a state's police power would be deemed to override the First Amendment there would have to be a state interest to be protected "unrelated to the suppression of free expression," and the statutory restriction would have to be "no greater than is essential to the furtherance of that interest." 391 U.S. at 377. The statute may not be "so broad that it strikes where no interest is served other than the proscription of expression." *Hodsdon v. Buckson,* 310 F. Supp. 528, 534 (Del. 1970).

█ In our opinion the statutory prohibition of the act of affixing a peace symbol to the American flag and displaying the flag with the peace symbol so affixed from a window is not constitutionally permissible as protection of a societal or governmental interest "unrelated to the suppression of free expression" as required by *O'Brien.* The prohibition of defendant's conduct does not fall within the class of any of the constitutionally permissible prohibitions already discussed, nor are the possible societal interests listed by Mr. Justice Harlan in *Street v. New York, supra,* available as justification for the statutory prohibition concerning the flag use involved here. The interests held insufficient to justify the prohibition of words critical or even contemptuous of the flag are discussed as follows by Mr. Justice Harlan in *Street v. New York, supra:*

(1) an interest in deterring appellant from vocally inciting others to commit unlawful acts; (2) an interest in preventing appellant from uttering words so inflammatory that they would provoke others to retaliate physically against him, thereby causing a breach of the peace; (3) an interest in protecting the sensibilities of passersby who might be shocked by appellant's words about the

American flag; and (4) an interest in assuring that appellant, regardless of the impact of his words upon others, showed proper respect for our national emblem.

394 U.S. at 591. If such interests are insufficient with respect to *words* considered in *Street v. New York, supra,* critical or contemptuous of the flag, they would clearly be insufficient as to *symbols* used conveying the same meaning as the words themselves; and a fortiori they would be insufficient as to symbols respectful of the flag and involving no physical destruction of any part thereof, the flag in conjunction with the peace symbol being used to passively communicate a constitutionally protected message. To prohibit defendant's conduct in the instant case when such conduct is nonseverable from a constitutionally protected message may in effect constitute a prohibition of free speech itself, and thus be violative of the First Amendment as construed in *United States v. O'Brien, supra.*

■ The next question presented, therefore, is whether a peace symbol, which would be protected symbolic speech if used away from the flag (*see Street v. New York, supra; Stromberg v. California, supra; Tinker v. Des Moines School Dist., supra; West Virginia State Bd. of Educ. v. Barnette, supra*), has no such special constitutional protection when the peace symbol is placed upon the flag itself. If the flag mirrors American experience, past and present; and if respect for the flag cannot constitutionally be compelled by a mandatory flag salute; and if symbolic opposition to the flag cannot be prohibited; and if symbolic as well as actual speech is entitled to constitutional protection; and if the suppression of free expression cannot be upheld in the absence of an independent governmental interest to be protected, unrelated to the suppression of free expression and not broader than is necessary for that purpose; and if offense to the sensibilities of the average citizen is not enough to condemn the exercise of free speech— can it be said to really matter, on a balancing of interests, whether the words or symbols are used away from the flag or representations thereof even though in closest proximity

thereto, or whether such words or symbols are used on the flag itself. The case nearest in point on this issue—apart from flag desecration cases involving the flag itself already cited—the rationale of which is applicable here, is *Long Island Vietnam Moratorium Comm. v. Cahn,* 437 F.2d 344 (2d Cir. 1970). That case, in a unanimous opinion by Chief Judge Lumbard, held that a peace symbol placed on a representation of the American flag was protected symbolic speech and that the New York Flag Use Statute (General Business Law of New York § 136(a), substantially identical with RCW 9.86.020(1) and (2)) violated the First Amendment because overbroad, vague and permitting selective enforcement of "only that expression which local officials will tolerate." 437 F.2d at 350. The court could see no difference in principle between its case and the words in *Street v. New York, supra.* Neither can we.

The doctrine of *Long Island Vietnam Moratorium Comm. v. Cahn, supra,* is necessarily supported by recent federal cases involving the flag itself that have invalidated flag desecration statutes as violative of the First Amendment because of overbreadth and vagueness. *Parker v. Morgan,* 322 F. Supp. 585 (W.D. N.C. 1971); *Hodsdon v. Buckson, supra; Crosson v. Silver,* 319 F. Supp. 1084 (Ariz. 1970). The case law on the validity of flag desecration statutes is not unanimous, however. *See inter alia State v. Turner,* 78 Wn.2d 276, 474 P.2d 91 (1970), in which the validity of former RCW 9.86.030 is assumed; *Sutherland v. DeWulf,* 323 F. Supp. 740 (S.D. Ill. 1971); *People v. Radich, supra; Hoffman v. United States,* 256 A.2d 567 (D.C. Ct. App. 1969); *Joyce v. United States,* 454 F.2d 971 (D.C. Cir. 1971). The instant case does not involve flag desecration and we need not determine whether the conclusion reached here concerning improper flag use likewise applies to flag desecration.

█ It should be noted that the decisions invalidating flag-desecration statutes or improper-use statutes do not hold that a flag-use statute or a flag-desecration statute cannot under any circumstances be enacted. We have already

pointed out that a state may protect a governmental interest under the limitations recognized in *United States v. O'Brien*, 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). The statute, however, cannot speak in such broad terms as to impair, prohibit or have a chilling effect upon the exercise of constitutionally protected rights of free speech. As stated in *NAACP v. Button*, 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963), "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms" (371 U.S. at 438) because these freedoms need "breathing space to survive" (371 U.S. at 433).

When the issue is whether a statute violates the First Amendment, it was recognized in *Adams v. Hinkle*, 51 Wn.2d 763, 322 P.2d 844 (1958), following the federal rule, that there is no presumption that the statute attacked is constitutional and that " 'the State has a heavy burden to demonstrate that the limitation challenged . . .' " is constitutionally valid. 51 Wn.2d at 769. Furthermore, a defendant charged with violating a statute ordinarily has no standing to assert the doctrine of overbreadth if he is not its victim (*State v. Cashaw*, 4 Wn. App. 243, 480 P.2d 528 (1971)); yet in a First Amendment case he does have standing to rely upon overbreadth on the face of the statute in either federal or state courts even if he thereby asserts overbreadth as to others. *United States v. Raines*, 362 U.S. 17, 21-22, 4 L. Ed. 2d 524, 80 S. Ct. 519 (1960); *Dombrowski v. Pfister*, 380 U.S. 479, 486, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965); *Thornhill v. Alabama*, 310 U.S. 88, 97-98, 84 L. Ed. 1093, 60 S. Ct. 736 (1940); *Fort v. Civil Service Comm'n*, 61 Cal. 2d 331, 392 P.2d 385, 389-90, 38 Cal. Rptr. 625, 630 (1964); *In re Davis*, 242 Cal. App. 2d 645, 51 Cal. Rptr. 702, 716-17 (1966); 2 C. Antieau, Modern Constitutional Law § 15.23 (1969).

Should overbreadth exist the statute itself may be invalidated, or the overbroad application of the statute to the defendant will be negated. As stated in *NAACP v. Button, supra* at 432:

764

> [I]n appraising a statute's inhibitory effect upon [First Amendment] rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar.

Such an approach lessens the danger of tolerating "a penal statute susceptible of sweeping improper application." *NAACP v. Button, supra* at 432-33. *See generally*, R. Sedler, *Standing to Assert Constitutional Jus Tertii in the Supreme Court*, 71 Yale L. J. 599 (1962); Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844 (1970); Note, *Exploiting the American Flag: Can the Law Distinguish Criminal From Patriot?*, 30 Maryland L. Rev. 332 (1970).

The instant case illustrates overbreadth on the face of RCW 9.86.020(1) and (2), not only with respect to the American flag itself, but also with respect to the items included in the statutory definition of the flag. RCW 9.86.010 makes it plain that the statutory prohibition is not limited to the flag itself. It also extends to any "flag, standard, color, ensign or shield, . . . or copy, picture or representation thereof . . . of any size, evidently purporting to be such . . . of the United States or of this state . . ." We need only consider the application of the statute to a representation of the flag, as distinguished from other items included in the flag definition, to make the point of overbreadth and illustrate its consequences. Thus it is arguable, although we need not determine the matter, that the definition, when read in conjunction with RCW 9.86.020, would have prohibited both the use of a picture of the flag over words as was done by the Seattle Post-Intelligencer in its July 4, 1970 edition (Seattle Post-Intelligencer, July 4, 1970 at page 1), and the publication by the Seattle Times of a picture of the American flag on which a person's picture might be said to have been superimposed (Seattle Times, June 14, 1970 § A, at page 1). (Appellant's exhibits 1 and 2.) Patriotic, public-spirited or ideological slogans such as "love America," "liberty," "brotherhood," "to our honored dead," or even "July 4, 1776," if placed

upon a picture of the flag, would be illegal. It would also be illegal to continue the long practice of using the flag or its representation in conjunction with the symbols prohibited by the statute notwithstanding the fact that this practice has been a traditional mode of free expression commonly used by both major and minor political parties throughout our history.

It would be irresponsible to suggest that the common use of flag representations to provide ideological emphasis or support for words or symbols considered public-spirited or patriotic, or in the course of political campaigns, proceeds upon any assumption other than the assumption that the use is entirely lawful and, to the more sophisticated at least, that such use is protected free speech. It must be remembered, however, that the right of free speech, symbolic or actual, is not limited to a message orthodox and uncontroversial, nor is it limited to words or symbols that would not affront the average citizen's sensibilities in the absence of a protectable governmental interest requiring otherwise. *See e.g., Street v. New York,* 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354 (1969); *United States v. O'Brien, supra; West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178, 147 A.L.R. 674 (1943). It is not suggested that the constitutionality of a statute be determined by the logical application of a widely held public opinion. This is because wishes expressing strongly held values and constitutional text may differ. Should such a difference exist, it would be our duty to follow the text. Yet if the text speaks in general terms requiring implementing definition by the court, such implementing definition must be a rational and reasonable one. Should the implementing definition be in conformity with the logical implications of publicly held values, the rational character of the implementing definition would be supported by that fact. We think that support exists here.

This being a First Amendment case, the defendant, even though not the victim of the overbreadth described in *Long Island Vietnam Moratorium Comm. v. Cahn, supra,* with

respect to flag representations, nevertheless has standing to take advantage of the overbreadth doctrine. *See United States v. Raines, supra; Dombrowski v. Pfister, supra; Thornhill v. Alabama, supra; Fort v. Civil Serv. Comm'n, supra; In re Davis, supra.* We conclude that RCW 9.86-.020(1) and (2) is invalid as unconstitutionally overbroad on its face.

In so concluding, we recognize that the problem here with respect to which we have both power and duty is only to determine whether the defendant had the constitutional right to do what he did. We judicially know that the exercise of the right of free speech often has emotional overtones. At one extreme such an exercise is regarded as a raw and irrational contest between government on the one hand and an irresponsible individual on the other. To others the exercise of the right of free speech is but the assertion of what the literal meaning of the First Amendment permits. The doctrines of symbolic speech and overbreadth as developed by the courts adopt neither extreme and seek to give effect both to the proper societal interest of the state and nation without rejecting the proper free speech demands of the individual. Under that doctrine, the American flag continues to be entitled to our affection and respect as described in *Halter v. Nebraska,* 205 U.S. 34, 51 L. Ed. 696, 27 S. Ct. 419 (1907). *Halter,* however, no more controls our decision in this case than does the latest case dealing with flag desecration which requires intent to desecrate as distinguished from flag use, which does not. *Joyce v. United States, supra; State v. Turner,* 78 Wn.2d 276, 474 P.2d 91 (1970). *Halter* was concerned with a portion of the Nebraska flag statute similar to RCW 9.86.020(3), not (1) or (2). It dealt with the validity of a statute forbidding the exploitation of the American flag in the sale of a product, namely, exploitation in the form of a representation of the American flag imprinted on a bottle of beer for purposes of advertisement. *Halter* had no occasion to discuss either the First Amendment, symbolic speech, or the doctrine of overbreadth—and did not do so. *See generally,* 16 Am. Jur. 2d,

*Constitutional Law* § 348 (1964). What we do here is merely to give proper weight to cases, including those referred to in this opinion, decided subsequent to *Halter* that, without departing from *Halter,* have developed the doctrine of symbolic speech in light of the doctrine of overbreadth.

In our opinion, RCW 9.86.020(1) and (2) would not violate the First Amendment if more narrowly drafted to protect a proper governmental interest as described in *United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). Although we express no opinion on the text of a proposed narrower draft of a flag desecration statute such as RCW 9.86.030 as amended, not here charged to have been violated by defendant, a suggested statute setting forth what its author contends is a protectable governmental interest is contained in Note, *Flag Desecration: Illegal Conduct or Protected Expression?,* 22 Case Western Reserve L. Rev. 555, 573 (1971). *See* Note, *Less Drastic Means and the First Amendment,* 78 Yale L. J. 464 (1969).

The judgment is reversed with directions to dismiss the charge.

UTTER, J., concurs.

WILLIAMS, J. (dissenting)—The principal question in this case simply stated is: Does the interest of the citizens of the state of Washington in the preservation of the integrity of the American flag transcend the desire of appellant to publicly proclaim his political views by the use of that flag as a backdrop or billboard? I believe the essential purpose of the flag should be preserved and that our state government has properly prohibited the use which appellant would make of it.

In essence, appellant's argument is that he has a right protected by the First Amendment to employ the American flag to express and convey his ideas and to make alterations to the flag best suited to his purposes. There is no doubt that an American flag so employed will attract attention and that a message placed thereon either in words or by symbol will be broadcast.

Freedom of speech is not beyond all control. A state interest and the general good may take precedence over the exercise of unfettered personal liberty. The test for determining whether a public interest is superior to the individual's exercise of free speech is stated in *United States v. O'Brien*, 391 U.S. 367, 377, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968) as follows:

> [W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

The statute in question is well within the requirements of these criteria.

The United States Supreme Court in *Halter v. Nebraska*, 205 U.S. 34, 51 L. Ed. 696, 27 S. Ct. 419 (1907), decided that a state may prevent the misuse of the American flag, not only to prevent breaches of the peace generated thereby, but also because

> [i]t is not extravagant to say that to all lovers of the country it [the flag] signifies government resting on the consent of the governed; liberty regulated by law; the protection of the weak against the strong; security against the exercise of arbitrary power; and absolute safety for free institutions against foreign aggression. As the statute in question evidently had its origin in a purpose to cultivate a feeling of patriotism among the people of Nebraska, we are unwilling to adjudge that in legislation for that purpose the State erred in duty or has infringed the constitutional right of anyone. On the contrary, it may reasonably be affirmed that a duty rests upon each State in every legal way to encourage its people to love the Union with which the State is indissolubly connected.

Should the law be, as contended by appellant, that each citizen under the guise of "symbolic speech," is free to mutilate or disfigure the flag to express his ideas, good or bad, then the essential purpose of the flag, which Woodrow

Wilson called "the emblem of our unity, our power, our thought, and our purpose as a nation," will be destroyed. M. Krythe, What So Proudly We Hail 26 (1968). The interest of every citizen as well as that of the state of Washington in the preservation of the flag, unmarked and unsullied, overrides appellant's privilege of citizenship and his personal liberty merely to the extent that he must find some other means, of which many are available, to express his ideas. *See Joyce v. United States,* 454 F.2d 971 (D.C. Cir. 1971); *People v. Radich,* 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970), *aff'g by an equally divided court,* 400 U.S. 864, 28 L. Ed. 2d 287, 91 S. Ct. 1217 (1971).

Our Supreme Court in *State v. Oyen,* 78 Wn.2d 909, 918, 480 P.2d 766 (1971) had this to say:

> In applying the concept in situations where freedom of speech may be concerned, it is essential to bear in mind that an otherwise valid statute, which, in protecting important societal interests, makes a particular course of conduct illegal, does not run afoul of the constitution merely because the right of free speech may be intermingled with the condemned conduct. *Cox v. Louisiana, supra,* [379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965)]; *United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968); *Cameron v. Johnson,* 390 U.S. 611, 20 L. Ed. 2d 182, 88 S. Ct. 1335 (1968); *Adderley v. Florida,* 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242 (1966); *Kovacs v. Cooper,* 336 U.S. 77, 93 L. Ed. 513, 69 S. Ct. 448 (1949).
>
> In such situations, however, it is incumbent upon the court to weigh the purported impairment of speech engendered by the statutory provision against the importance of the societal interest sought to be vindicated by the statute, as well as the nature and extent of the threat which the statutorily forbidden conduct poses to that interest. And, too, the alternatives available to the state and the claimant must be evaluated, *i.e.,* whether the state may achieve its ends in a less restrictive manner and/or the claimant effect his communication in a way less detrimental to the societal interest.

As seen, the statute protects an important societal interest, whereas appellant has suffered a very slight impair-

ment of his method of expression and no strictures on speaking, writing, or conveying his ideas by any other means. *Oyen* is a much more provocative case than the one presented here, because the defendants in *Oyen* were arrested for engaging in pamphleteering, one of the truly historical methods of public dissemination of political views. The Supreme Court applying the test above set out held that even though the pamphleteering was conducted on a walkway outside of school buildings, it must yield to the interest of the state in maintaining a scholastic atmosphere for students of the school.

As to appellant's contention that the statute does not meet the constitutional test of due process because it is vague, I believe that it is sufficiently definite to inform a person with reasonable precision what acts are prohibited, so that he may have a certain, understandable rule of conduct and know what acts he must avoid. *State v. Oyen, supra.*

It is of no importance that appellant was arrested for violation of a flag misuse law rather than one for desecration containing an element of contemptuous intent because the power of the state to further the peoples' interest by protecting the flag may be exercised irrespective of evil or malice. *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970). The statute with which we are concerned has for its purpose the preservation of unmarked national and state symbols. The prohibition is against all disfigurement, no matter how noble the thought behind it.

Freedom of speech does not, in my view, include freedom to publicly use the American flag in the manner employed by appellant, in the face of an acknowledged societal interest in the flag. Although it may be important to appellant to express his views in this novel way, he should remember that the United States, as symbolized by the American flag, is important too.

The judgment should be affirmed.

Petition for rehearing denied December 17, 1971.

Appealed to Supreme Court December 27, 1971.