62 N.J. 279 (1973)
301 A.2d 129
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STANLEY S. ZIMMELMAN, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued December 5, 1972.
Decided March 5, 1973.
*280 Mr. Robert D. Westreich, Assistant Deputy Public Defender, argued the cause for the appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Fred H. Kumpf, Deputy Attorney General, argued the cause for the respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the Court was delivered by JACOBS, J.
The Camden County Court found the defendant guilty on an indictment which charged that, contrary to the provisions of N.J.S.A. 2A:107-1, the defendant "did deface the American Flag by putting the sign of peace in black ink on the face of two American Flags and displaying them on the side of an ice cream truck." State v. Zimmelman, 118 N.J. Super. 345 (1972). The defendant appealed to the Appellate Division and we certified before argument there. R. 2:12-2.
The defendant Stanley S. Zimmelman was a 1970 graduate of Temple University. Though he planned further studies towards a medical career his summer of 1970 was occupied by temporary employment as an itinerant ice cream vendor. On July 4 he decorated his truck with red, white and blue streamers and his attire was in the same colors. Two American flags were displayed on the truck; each of the flags bore the now familiar peace symbol, namely, a circle containing lines in the form of an inverted trident. *281 In his testimony, which was fully credited by the Camden County Court, the defendant stated that the purpose of the streamers and his colorful dress "was a display of patriotism," since it was July 4th." His purpose in placing the peace symbols on the flags was expressed by him in the following terms: "It's my belief that the flag, its meaning, the pursuit of peace and happiness for all people, and I believe this was being supplemented at the time, and many people were not cognizant of this very essential part of the flag in American heritage, so it was my intention to sort of awaken the people to something they had forgotten about, which could be read into the flag that it meant this and people were forgetting about this part."
The defendant testified further that his placement of the peace symbols was not intended to defile or degrade the flag in any way, that he was not aware that it might be a criminal offense and that if the police officers who stopped his truck had asked him to remove the flags he would have done so readily since it was not his intention to break any law. But admittedly the officers gave no warnings, made no requests, and summarily placed him under arrest. This was followed by indictment and trial before a Judge of the Camden County Court, on the defendant's waiver of trial by jury. The Judge, after stating that he had no doubt that the defendant did not "consciously intend to violate the law," "regretfully" held that the statute had been violated and that the defendant was "guilty as charged."
At sentencing, the Judge stated that he took into consideration the defendant's prior unblemished record and the fact that he was "a person obviously of intelligence, ability and conviction"; nevertheless, he imposed a fine of $200 and placed the defendant on probation for a period of 1 year. But, as his counsel appropriately pointed out at sentencing, the defendant's newly acquired "criminal record" had already had collateral consequences adverse to him, such as the additional difficulties which confronted him on his application for financial assistance in furtherance of his graduate *282 studies. Apart from the persuasive legal contentions now being advanced on the defendant's behalf, it does seem to us that more enlightened exercises of official judgment and discretion along the way would have, as a practical matter, avoided this largely purposeless criminal proceeding against him. See generally, Abrams, "Internal Policy: Guiding the Exercise of Prosecutorial Discretion," 19 U.C.L.A.L. Rev. 1 (1971); Tieger, "Police Discretion and Discriminatory Enforcement," 1971 Duke L.J. 717; Davis, Discretionary Justice: A Preliminary Inquiry (1969).
Legislation seeking to preserve the American flag from desecrating uses has been common since the turn of the century. 9B Uniform Laws Ann., "Uniform Flag Act," 48 (1966); Rosenblatt, "Flag Desecration Statutes: History and Analysis," 1972 Wash. U.L.Q. 193. In 1899 and 1903 New York adopted flag legislation (see People v. Van De Carr, 91 App. Div. 20, 86 N.Y.S. 644, aff'd, 178 N.Y. 425, 70 N.E. 965 (1904); Rosenblatt, supra at 200) and in 1904 New Jersey adopted its Flag Act which followed the general outlines of New York's 1903 enactment. L. 1904, c. 16, p. 35. The primary goal of New Jersey's Act, as set forth in marginal notes (cf. State v. Kohler, 40 N.J. Super. 600, 606-607 (App. Div. 1956)), was to make "mutilating or using flag for advertising purposes a misdemeanor." When L. 1904, c. 16 (see 2 Comp. Stat. 1910, p. 1745) was carried over into the 1937 Revised Statutes it was broken up into 4 sections. The first (R.S. 2:130-1) was set forth under the heading "Use of state or national flag for advertising"; the second (R.S. 2:130-2) bore the caption "Mutilation or defilement of flag"; the third (R.S. 2:130-3) contained a definition and the fourth (R.S. 2:130-4) enumerated specific permitted uses of the flag. When title 2 of the Statutes was revised in 1951 the sections were carried forth without material changes and they now appear under the same captions in N.J.S.A. 2A:107-1 to N.J.S.A. 2A:107-4, inclusive.
*283 N.J.S.A. 2A:107-1 provides in most sweeping terms that any person who affixes to any United States or New Jersey flag "any inscription, design, device, symbol, name, advertisement, words, characters, marks, notice or token of any nature whatever" shall be guilty of a misdemeanor. State v. Zimmelman, supra, 118 N.J. Super. at 347-348. N.J.S.A. 2A:107-2 provides in more narrow terms that any person "who publicly mutilates, tramples upon or otherwise defaces or defiles" any flag of the United States or New Jersey shall be guilty of a misdemeanor. N.J.S.A. 2A:107-3 defines flag to include any picture or representation purporting to be a flag of the United States or a flag of New Jersey and any picture or representation of either upon which shall be shown "the colors, the stars and stripes, in any number of either." State v. Zimmelman, supra, 118 N.J. Super. at 348. N.J.S.A. 2A:107-4 provides that the restrictive provisions of the statute shall not apply to any act permitted by United States statutes or military regulations or to the display of any flag disconnected from advertisement in any "newspaper, periodical, book, pamphlet, circular, certificate, diploma, warrant or commission of appointment to office, ornamental picture, or stationery used in correspondence."
In State v. Schlueter, 127 N.J.L. 496 (1941), the former Supreme Court had occasion to construe the terms of our Flag Act. A German woman, after proclaiming herself to bystanders as a Nazi, had pulled a small American flag from the front of her motorcycle and had torn, crumpled and thrown it to the ground. She was convicted of defacing the flag in violation of R.S. 2:130-2 (now N.J.S.A. 2A:107-2). Her conviction was sustained in an opinion by Justice Case which gave the following interpretation to the section in question: "We understand that the statute, in making it a misdemeanor to deface or to defile the flag, used those words in their meaning of `dishonor.' `Dishonor' is purposeful. The word imputes a lively sense of shaming or an equivalent acquiescent callousness." 127 N.J.L. at 499. *284 Under that interpretation the defendant Zimmelman could not have been convicted of defacing the flag in violation of N.J.S.A. 2A:107-2. Clearly, he could not, on the evidential showing below, have been found to have had any purpose to dishonor the flag. See State v. Turner, 78 Wash.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970); cf. State v. Hudson County News Co., 35 N.J. 284 (1961).
Schlueter was decided during World War II and did not deal with the constitutional validity of R.S. 2:130-2 (now N.J.S.A. 2A:107-2). No constitutional contentions were advanced by the defendant Schlueter and in view of the temper of the times (cf. Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944)), they would presumably have been rejected out of hand. See Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907). However, later judicial developments, particularly under the First Amendment, create many doubts as evidenced by the diverse opinions in the pertinent decisions including those which have arisen out of the New York legislation on which N.J.S.A. 2A:107-2 was modeled. See People v. Street, 20 N.Y.2d 231, 282 N.Y.S.2d 491, 229 N.E.2d 187 (1967), rev'd, Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970), aff'd by evenly divided court, 401 U.S. 531, 91 S.Ct. 1217, 28 L. Ed 2d 287 (1971).
In Street, supra, 20 N.Y.2d 231, 282 N.Y.S.2d 491, 229 N.E.2d 187, a World War II veteran had expressed his indignation at the shooting of James Meredith, a civil rights leader, by burning an American flag and telling an assembled crowd that "if they let that happen to Meredith we don't need an American flag." He was convicted of having publicly mutilated the flag and his conviction was sustained in a unanimous judgment of the New York Court of Appeals. However, on further review that judgment was reversed in a 5 to 4 decision of the United States Supreme *285 Court. Street v. New York, supra, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572.
In his opinion for the Supreme Court in Street, Justice Harlan noted that while disrespect for the flag was to be deplored in the currently vexed times as well as in calmer times, the defendant had the right under the First Amendment to express, at least in words, his disfavor of the flag so long as the manner and circumstance of his expression did not run counter to a legitimate governmental interest. While that interest might properly be grounded on preserving the peace it could not properly be grounded on a demand that respect for the flag be universally shown. 394 U.S. at 593-594, 89 S.Ct. 1354, 22 L.Ed.2d at 585-586; Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).
In Street the Supreme Court found that the conviction might have been at least partially grounded by the trial judge on the constitutionally-protected words which the defendant spoke; the Court therefore set it aside but left open the question of whether the conviction could constitutionally have been upheld if it had rested solely, and without reference to accompanying words, on the contemptuous act of burning the flag. 394 U.S. at 581, 89 S.Ct. 1354, 22 L.Ed.2d at 578. See Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970). Later lower court cases have taken differing positions on this open question. Compare Joyce v. United States, 454 F.2d 971 (D.C.C. 1971), cert. denied, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972) and Deeds v. State, 474 S.W.2d 718 (Texas Crim. App. Ct. 1972) with Crosson v. Silver, 319 F. Supp. 1084 (D. Ariz. 1970) and Alford v. Municipal Court, 26 Cal. App.3d 244, 102 Cal. Rptr. 667 (1972), cert. denied, ___ U.S. ___, 93 S.Ct. 912, 34 L.Ed.2d 690 (1973). See also Goguen v. Smith, 471 F.2d 88 (1 Cir. 1972); Hodsdon v. Buckson, 310 F. Supp. 528 (D. Del. 1970); Oldroyd v. Kugler, 327 F. Supp. 176 (D.N.J. 1970), rev'd, 461 F.2d 535 (3 Cir. 1972), s.c., 352 F. *286 Supp. 27 (D.N.J. Dec. 21, 1972); David Prosser, "Desecration of the American Flag," 3 Ind. L. Forum 159 (1969); Notes, 4 Valparaiso Univ. L. Rev. 345 (1970); 30 Maryland L. Rev. 332 (1970); 1 New Mex. L. Rev. 352 (1971); 22 Case W. Res. L. Rev. 555 (1971).
In People v. Radich, supra, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 2d 30, the defendant was an art gallery proprietor who had displayed an anti-Vietnam War sculpture incorporating the American flag, including the wrapping of a phallic symbol with the flag. He was convicted of having violated the provision in New York's flag statute which sets forth that anyone who publicly defaces or casts contempt on the flag of the United States shall be guilty of a misdemeanor. In its opinion upholding the conviction, the New York Court of Appeals noted that the statutory provision was "aimed at keeping the public peace" (308 N.Y.S.2d at 853, 257 N.E.2d at 35-36) which is of course recognized generally as a legitimate governmental interest. It viewed the Supreme Court's holding in Street, supra, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572, as applicable to meshed acts and words of protest involving the flag but as inapplicable to acts alone even though the acts themselves be a symbolic form of protest. 308 N.Y.S.2d at 850, 257 N.E.2d at 33; United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969).
Chief Judge Fuld who wrote his Court's unanimous opinion in Street dissented in Radich. He viewed the sculpture as symbolic protest and voiced the opinion that "in the absence of a showing that the public health, safety or the well being of the community is threatened, the State may not act to suppress symbolic speech or conduct having a clearly communicative aspect, no matter how obnoxious it may be to the prevailing views of the majority." 308 N.Y.S.2d at 855, 257 N.E.2d at 37. He noted that the public flag burning in Street, on a Brooklyn street corner when feelings *287 were running high following the shooting of Meredith, "posed a threat to public order which the State could legitimately act to prevent." 308 N.Y.S.2d at 856, 257 N.E.2d at 38. But he found no comparable threat from the display in the art gallery and he would accordingly have reversed. On appeal, the Supreme Court upheld the conviction by an equally divided vote with Justice Douglas not participating. 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287.
In the light of the foregoing we shall assume, for present purposes, that section 2 of the Flag Act (N.J.S.A. 2A:107-2) could withstand constitutional attack, at least where the nature of the defacement is such as to pose a threat to public order which the State may legitimately act to prevent. However, we need not pursue the matter here for the defendant Zimmelman was not charged or convicted under section 2. He was charged with and convicted of placing peace symbols on American flags in violation of section 1 (N.J.S.A. 2A:107-1). Unlike section 2, that section does not relate to public desecrations which may endanger the peace. Its history discloses that it was really aimed at commercial misuses of the flag, but its sweeping language also prohibits noncommercial inscriptions or attachments whether they be patently communicative or not and whether they be patently patriotic or not. In the process it extends not only to actual flags and facsimiles but also to gross variations thereof (N.J.S.A. 2A:107-3), while excluding favored types of publication along with other selected materials. N.J.S.A. 2A:107-4. It is readily vulnerable to charges of vagueness, overbreadth and arbitrary discrimination and its counterpart has been appropriately described elsewhere as "an uncommonly bad statute." Parker v. Morgan, 322 F. Supp. 585, 586-587 (D.N.C. 1971). In recent days similar statutory provisions in other states have been stricken in cases involving the placement of peace symbols on flags of the United States. See Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2 Cir. *288 1970); State v. Spence, 5 Wash. App. 752, 490 P.2d 1321 (1971); City of Miami v. Wolfenberger, 265 So.2d 732 (Fla. Dist. Ct. App. 1972); cf. Thoms v. Smith, 334 F. Supp. 1203 (D. Conn. 1971); Parker v. Morgan, supra, 322 F. Supp. 585.
In Cahn the Second Circuit had occasion to pass on the validity of section 136(a) of the General Business Law of New York, McKinney's Consol. Laws, c. 20, which is comparable to section 1 of our Flag Act (N.J.S.A. 2A:107-1). The plaintiffs had adopted an emblem consisting of a variant representation of the American flag with a peace symbol superimposed on it. After the District Attorney had announced that anyone distributing the emblem would be prosecuted under section 136(a), the plaintiffs instituted a federal proceeding to have the statutory provision declared unconstitutional. The Second Circuit, in an opinion by Chief Judge Lumbard, held that section 136(a) was unconstitutionally vague and overbroad.
The court pointed out that the statutory language was broad enough to prohibit all kinds of flag symbols "such as have been used for many years in election campaigns, patriotic movements and so forth" (437 F.2d at 348) and would also prohibit "the respectful and customary use of emblems employing the flag or resembling the flag, although the emblems are used to espouse ideas  a communicative activity which is protected by the First Amendment." 437 F.2d at 348. It noted that section 136(a) "was not meant to prohibit incitement of onlookers to unlawful acts, a purpose which did motivate the enactment of the flag mutilation and defilement provisions." 437 F.2d at 349; cf. N.J.S.A. 2A:107-2. It could find no legitimate state interest to support the breadth of section 136(a) and specifically rejected the suggestion that "the state's interest in ensuring proper respect for the integrity of the flag" might suffice. 437 F.2d at 349; see Street v. New York, supra, 394 U.S. at 593-594, 89 S.Ct. 1354, 22 L.Ed.2d at 585-586; Board *289 of Education v. Barnette, supra, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628.
In State v. Spence, supra, 5 Wash. App. 752, 490 P.2d 1321, the holding in Cahn, supra, 437 F.2d 344, was applied to set aside the conviction of a man who had, as had the defendant Zimmelman here, displayed an American flag with a peace symbol superimposed on it. The conviction had been entered under a Washington statute which broadly prohibited the placing of "any word, figure, mark, picture, design, drawing or advertisement" on any flag of the United States or the State of Washington. In the course of its opinion, the court noted that the attachment of the peace symbol to the flag constituted symbolic speech which could not, under the First Amendment, be prohibited without a legitimate supporting state interest. After citing United States v. O'Brien, supra, 391 U.S. at 376-377, 88 S.Ct. 1673, 20 L.Ed.2d at 679-680, for its balancing approach, the court stated that it could not, on any rational balance, find a sufficient state interest to justify the state's exercise of its police power in the manner at hand. 490 P.2d at 1325-1326. While it concluded that the Washington statute as written was "unconstitutionally overbroad on its face" (490 P.2d at 1328), it suggested that a more narrowly drawn statute might well withstand attack. 490 P.2d at 1329.
In Parker v. Morgan, supra, 322 F. Supp. 585, a three-judge district court struck North Carolina's flag act in an opinion which approved much though not all that was said in Cahn, supra, 437 F.2d 344. The North Carolina statute contained a provision comparable to our section 1 (N.J.S.A. 2A:107-1), along with a definition comparable to that contained in our section 3 (N.J.S.A. 2A:107-3). The defendant Parker wore a jacket which bore an American flag with the legend "Give peace a chance." He was arrested by state authorities and thereafter instituted a federal action seeking to have the statute declared unconstitutional. He prevailed in an opinion by Circuit Judge Craven who found that the North Carolina statute attempted *290 too much, went too far and was "void both for vagueness and overbreadth." 322 F. Supp. at 588.
Judge Craven described the statutory definition as "simply unbelievable." 322 F. Supp. at 588. Like New Jersey's definition in section 3 (N.J.S.A. 2A:107-3) it embraced all flags no matter "how many stripes or how many stars." 322 F. Supp. at 588. And like New Jersey's section 1 (N.J.S.A. 2A:107-1) it prohibited the placing of anything whatever on the flag although the court expressed doubt that it was intended to prohibit the superimposition of matters such as the Great Seal of the United States, finding it difficult "to conceive of any state interest in preventing such a design." 322 F. Supp. at 589. It considered that the line would have to be drawn "at the point of contemptuous physical contact" and that, at the outermost, the Legislature could constitutionally "make it criminal to willfully and knowingly cast contempt upon the flag by public acts of physical contact such as mutilation, defiling, defacing or trampling." 322 F. Supp. at 590; see N.J.S.A. 2A:107-2; State v. Schlueter, supra, 127 N.J.L. 496.
Parker, 322 F. Supp. 585 would evidently uphold a provision such as our section 2 (N.J.S.A. 2A:107-2) on a lesser showing of legitimate state interest than that called for by Cahn (437 F.2d 344). Be that as it may, we are concerned here not with section 2 but with section 1. The opinions in both Parker and Cahn call vigorously, and we believe soundly, for the striking of our section 1 (N.J.S.A. 2A:107-1) as unconstitutionally overbroad, particularly when it is read with the expansive definition in section 3 (N.J.S.A. 2A:107-3). As we pointed out earlier, section 1 was really aimed at commercial misuse of the flag and if its language were so confined it would presumably be upheld under Halter v. Nebraska, supra, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696. But its language is so broad and sweeping as to present fatal interpretative doubts and constitutional infirmities. Its literal terms prohibit the traditional as well as the extreme, the patriotic as well as the nonpatriotic *291 and the communicative as well as the noncommunicative. It is hardly conceivable that the Legislature exercised its police power (Crosson v. Silver, supra, 319 F. Supp. at 1087) with any such goal in mind or that any such goal could reasonably be viewed as serving a legitimate State interest or as meeting a current public need. Cf. N.J. Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162, 168 (E. & A. 1939); One Eleven Wines & Liquors, Inc. c. Div. Alcoholic Bev. Cont., 50 N.J. 329, 341 (1967).
Following the assassination of President Kennedy, flags with his photograph superimposed were widely distributed and displayed. During early and recent national elections reproductions of flags, with photographs of the candidates superimposed, appeared on all sorts of campaign paraphernalia. Needless to say they brought forth no prosecutions nor were they generally understood to be violative of the law. Similarly patriotic slogans superimposed on flags or flag representations have been widely displayed without any suggestion of law violation or prosecution by the authorities. But the defendant Zimmelman's superimposition of the peace symbol, though it was respectful and patriotic in his eyes, did bring forth the suggestion of law violation and the ensuing prosecution, presumably because it involved negation rather than affirmation of official administration policy. Surely such course is intolerable in a democracy which values so highly the right of peaceful dissent. See Board of Education v. Barnette, supra, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; Long Island Vietnam Moratorium Committee v. Cahn, supra, 437 F.2d 344. Putting the matter pragmatically, as Chief Judge Lumbard did at the close of his opinion in Cahn: "Because of its overbreadth, the statute vests local law enforcement officers with too much arbitrary discretion in determining whether or not a certain emblem is grounds for prosecution. It permits only that expression which local officials will tolerate; for example, it permits local officials to prosecute peace demonstrators *292 but to allow `patriotic' organizations and political candidates to go unprosecuted." 437 F.2d at 350.
All of the foregoing points up the serious dangers incident to the overbroad language in section 1 (N.J.S.A. 2A:107-1) and the special need for striking it from the books in its existent omnibus form; we of course have no present occasion to pass judgment on or express an opinion with respect to any revisions of the Flag Act which the Legislature may ultimately choose to adopt. Cf. State v. Spence, supra, 490 P.2d at 1329; Parker v. Morgan, supra, 322 F. Supp. at 590. The judgment of conviction entered in the court below is:
Reversed, with direction that the indictment returned against the defendant be dismissed.
CONFORD, P.J.A.D., Temporarily Assigned, concurring.
I am in accord with the conclusion of the Court that N.J.S.A. 2A:107-1, under which defendant was convicted, is void as unconstitutionally vague, overbroad and discriminatory, read, as it must be, with N.J.S.A. 2A:107-3 and 4, which sections qualify it. I thus concur in the reversal of the convictions and in the Court's opinion to that extent.
I do not, however, concur in so much of the opinion of the Court as may be understood to reflect the view that defendant's present conduct in relation to the flag could not be validly proscribed by an appropriately drawn statute. I would refrain from an expression of opinion to that effect, as I do not regard that issue as necessarily tendered here, and deem it an important one determination of which ought to await its presentation in the context of a charge of violation of a statute which did nothing more than simply proscribe the public display of an American Flag the face of which contained extrinsic matter of any kind. Cf. Commonwealth v. Janoff, 439 Pa. 212, 266 A.2d 657 (Sup. Ct. 1970); Halter v. Nebraska, 205 U.S. 34 (1907). When and if that narrow issue is ever presented a question will arise as to whether the State does not have a substantial governmental *293 interest in preservation of the public prospect of the historic, unmarked American Flag, as the ideologically neutral and universally recognized symbol of the nation's identity, cf. dissent of Justice Fortas in Street v. New York, 394 U.S. 576, 616-17 (1969); Goguen v. Smith, 343 F. Supp. 161, 165 (D. Mass. 1972), sufficient to outweigh First Amendment objections based upon the limited impairment of expression of those who would still be free to affix and display any message or symbol to, alongside or in association with the flag[1] but would only be forbidden to display it if physically defaced. See Parker v. Morgan, 322 F. Supp. 585, 588, 590, 592-594 (W.D.N.C. 1971); Hoffman v. United States, 445 F.2d 226, 229 (D.C. Cir.1971). I think it preferable to withhold any intimation of opinion on that question in this case for the reasons stated above and in view of the amplitude of the grounds for nullifying N.J.S.A. 2A:107-1 as it stands.
CONFORD, P.J.A.D., concurs in result.
For reversal  Chief Justice WEINTRAUB, and Justices JACOBS, HALL, and MOUNTAIN, and Judges CONFORD, SULLIVAN and LEWIS  7.
For affirmance  None.
NOTES
[1] I would agree that on the authority of the cases cited in the Court's opinion so much of the act as proscribes appending, annexing or affixing any (non-commercial) words, mark or design to the flag, as distinguished from placing same upon the face of the flag proper, is vulnerable on First Amendment grounds. For example, in recent months thousands of decals of the flag with annexed messages of one or another view of the Vietnam War have been placed on automobiles. I regard this activity as substantially different, in a First Amendment sense, from using the flag as writing material for inscription of the same messages, whether or not the messages are "patently communicative" or "patently patriotic." As indicated above, the question of the State's power to forbid the latter should not be foreclosed by the present opinion of the Court.